LUMBERMENS MUTUAL CASUALTY
COMPANY, Plaintiff,

v.

BORDEN COMPANY, Inc. and Borden
Chemical Company, Defendants.

LUMBERMENS MUTUAL CASUALTY
COMPANY, Plaintiff,

v.

The BORDEN COMPANY, Inc., Black-
stone Mutual Insurance Company, Affil-
iated F.M. Insurance Company, United
Engineers and Contractors, Inc., the
Wickes Corporation, Vulcan-Cincinnati
Corporation, Catalysts and Chemicals,
Inc., and Monochem, Inc., Defendants.

United States District Court
S. D. New York.

Jan. 4, 1965.

Townley, Updike, Carter & Rodgers, New York City, for Lumbermens Mut. Cas. Co.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for Borden Co., Inc.

Rein, Mound & Cotton, New York City, for Blackstone Mut. Ins. Co. and affiliated F. M. Ins. Co.

Alexander, Ash & Schwartz, New York City, for United Engineers & Contractors, Inc.

Purdy, Lamb & Catoggio, New York City, for Wickes Corp.

Bigham, Englar, Jones & Houston, New York City, for Monochem, Inc.

TENNEY, District Judge.

The within action for declaratory judgment is brought by plaintiff Lumbermens Mutual Casualty Company (hereinafter referred to as "Lumbermens") against various named defendants. Of the eight defendants named in the complaint, six move herein to dismiss the complaint on various asserted grounds. The defendants Blackstone Mutual Insurance Company (hereinafter referred to as "Blackstone"), Affiliated F. M. Insurance Company (hereinafter referred to as "Affiliated"), United Engineers and Contractors, Inc. (hereinafter referred to as "United"), The Wickes Corporation (hereinafter referred to as "Wickes"), and Monochem, Inc. (hereinafter referred to as "Monochem"), move individually to dismiss the complaint under Rule 12(b) of the Federal Rules of Civil Procedure on the following grounds:

a) Lack of jurisdiction over the subject matter of the within action.

b) Failure to state a claim against each defendant individually, upon which relief can be granted.

Alternatively, the defendants request the Court to dismiss the complaint as a matter of discretion. The defendant Borden Company, Inc. (hereinafter referred to as "Borden") asks the Court to dismiss the complaint as a matter of discretion or, alternatively, to stay the within action pending a determination of a parallel suit now pending between Lumbermens and Borden in the United States District Court for the Eastern District of Louisiana. In addition, in the two-party action pending herein, to wit, "Lumbermens Mutual Casualty Company v. Borden Company, Inc. and Borden Chemical Company", 64 Civil 1086, defendant Borden moves for a change of venue to the United States District Court for the Eastern District of Louisiana.

For convenience and clarity, the defendants United, Wickes and Monochem will at times be referred to herein as the "subrogation defendants" and the defendants Blackstone and Affiliated as the "insurance defendants".

The within dispute arises out of thirteen claims aggregating approximately $1,350,000 made under two casualty insurance policies issued by plaintiff to Borden. The complaint pleads thirteen counts against defendant Borden, one separate count for each of Borden's thirteen insurance claims. The counts are pleaded in chronological order of the thirteen occurrences upon which the insurance claims are based. In each count plaintiff pleads the basis of its refusal to pay the claim, including special defenses based on certain clauses of the policies more fully set forth infra. Immediately following each count pleaded against Borden in the complaint, plaintiff alleges in separate counts the various Borden rights against the other named defendants arising out of the particular occurrence upon which the Borden claim is based.

The general pattern of the complaint is best illustrated by a reference to Count I.

Count I pleads a claim made by Borden against plaintiff under plaintiff's Policy No. 2XL 71499, in the amount of $87,950. Borden made this claim on or about

October 29, 1963, and the complaint alleges the operative facts as follows:

"* * * Borden claims said sum represents a loss suffered by Borden resulting from superheater tube failures on April 25, 1962, and April 27, 1962, in two boilers owned and maintained by Monochem and supplying steam for Borden. Borden claims that the resultant unavailability of steam supply delayed checking of equipment and thereby caused delays of 105 hours and 40 minutes in the start-up of methanol and vinyl chloride production for its account." (¶ 15, Complaint.)

The complaint then goes on to plead various facts which plaintiff alleges show that Borden's claim No. 1 is not payable. Initially, plaintiff denies that Borden incurred any loss within the coverage of plaintiff's policy by reason of the acts alleged in Paragraph 15. Plaintiff then sets forth three special grounds of avoidance of liability.

The first rests on the "commencement of liability" clause of the policy which limits liability to a period starting twenty-four (24) hours prior to plaintiff's receipt of notice of the accident causing the claimed loss (¶ 17, Complaint). Plaintiff then alleges that the notice so required as to the occurrences of April 25 and April 27, 1962, was not received until May 3, 1962 (¶ 18, Complaint). Consequently, since the claimed delays lasted only 105 hours and 40 minutes, no loss was incurred after liability commenced and no insurance is thus payable.

The second special defense rests on the policy clause requiring Borden to give plaintiff reasonable time and opportunity to inspect the property and premises before repairs are undertaken or physical evidence of the accident removed (¶ 19, Complaint). Plaintiff alleges that Borden failed to comply with this clause with respect to the superheater tube failures upon which the first claim is based (¶ 20, Complaint), and, accordingly, liability under the policy was thereby defeated.

The third special defense is the most relevant to the issues presented herein. Paragraphs 23 and 24 of the complaint allege:

"23. Said policy No. 2XL 71499 provided that upon making any payment thereunder, plaintiff would be subrogated to Borden's rights of recovery therefor against any person and that Borden would do nothing after any claimed accident to prejudice such rights.

"24. On information and belief, Borden had or acquired rights of recovery against United, Wickes and Monochem with respect to the alleged occurrences upon which Borden Claim 1 is predicated, and Borden has released, waived, abandoned, destroyed or otherwise prejudiced said rights, or some of them, to plaintiff's prejudice and in violation of the aforesaid provision of policy No. 2XL 71499."

Thus plaintiff alleges that by reason of a wrongful release, or destruction of plaintiff's subrogation rights, by Borden with respect to reported superheater tube failure of April 25 and 27, 1962, Borden's claim is not payable. The third parties against whom plaintiff alleges Borden had such rights are United, Wickes and Monochem, three of the moving defendants herein.

Count II of the complaint is pleaded as an express alternative to the third special defense set forth in Paragraph 24, supra, and is pleaded against defendants United and Wickes (¶ 25, Complaint). In other words, Count II pleads the continued existence of rights of Borden against United and Wickes, arising out of these occurrences and the alleged interest of plaintiff therein as subrogee.

More specifically, Count II re-pleads the existence of the insurance policy, the occurrences set forth in Paragraph 15 of the complaint, supra, and the subrogation provisions of the policy (¶ 26, Complaint). Plaintiff then alleges that United and Wickes supplied the boilers in question with knowledge of their use and purpose and gave warranties of fitness

and merchantable quality (¶¶ 29–32, Complaint). It is further alleged that the boilers were defective and that said defects caused the asserted superheater tube failures upon which Borden's claim No. 1 is predicated and that said defects resulted from the failure of United and Wickes to exercise due care in the design and construction of the boilers. (¶¶ 32–33, Complaint.)

"By reason of the foregoing, Borden has certain rights of recovery against United and Wickes to which plaintiff will be subrogated in the event of any payment under its policy based on Borden Claim 1. In the event that it is determined herein that plaintiff is liable to Borden upon said Borden Claim 1, United and Wickes will be liable to plaintiff for all or part thereof." (¶ 34, Complaint.)

Count III pleads in like manner an existing right of Borden against Monochem arising out of the occurrences upon which Borden's claim No. 1 is based. This count, as well, is pleaded as an alternative to the allegation in Paragraph 24, supra, that Borden has released or destroyed rights against Monochem to plaintiff's prejudice and in violation of the subrogation clause in the policy. (¶ 35, Complaint.)

Similar to Count II pleaded against United and Wickes, plaintiff re-pleads the policy and the subrogation clause (¶ 36, Complaint). The re-pleading also includes the allegation that the two boilers in which the superheater tube failures occurred were owned and maintained by Monochem (¶ 15, Complaint). Plaintiff then alleges the failure of Monochem to exercise due care in operating and maintaining the boilers in question (¶ 39, Complaint) and that Monochem had assumed a continuing duty to supply steam to Borden and, by reason of its failure to perform said obligation, the occurrences set forth in Paragraph 15, supra, took place (¶¶ 37–38, Complaint). Finally, plaintiff alleges that as a result of the foregoing breaches of duty, Borden is alleged to have rights against Monochem to which plaintiff will be subrogated on any payment as to Borden's claim No. 1 (¶ 40, Complaint).

In addition to Borden's claim No. 1, defendants United and Wickes are involved in the litigation in connection with two other Borden claims, Nos. 7 and 8.

Borden's claim No. 7 is in the amount of $109,122, for a loss allegedly resulting from failure on September 10, 1962, of five superheater tubes in a boiler owned and operated by Monochem which United and Wickes had supplied. (Paragraph 137 of the complaint alleges the occurrence, forming the basis of this particular claim; Paragraph 29 alleges the involvement of United and Wickes with the boiler, the same boiler involved in claim No. 1, and Paragraph 147 re-alleges Paragraphs 29 and 137, tying in these two defendants.)

Plaintiff pleads defensively against Borden's claim No. 7, as it did in claim No. 1, supra, that Borden has wrongfully released or destroyed rights against United and Wickes with respect to this occurrence (¶ 146, Complaint). Then, as was the case in claim No. 1, and as an alternative, plaintiff pleads against United and Wickes the continued existence of rights in Borden, in that the failure of the superheater tubes resulted from defects in the boiler and from the failure of United and Wickes to use due care, and that plaintiff will be subrogated to these rights in the event of any payment under its policy based on Borden's claim No. 7 (¶¶ 149–151, Complaint).

The identical situation appears with respect to Borden's claim No. 8. It arises from another alleged superheater tube failure in a Monochem boiler supplied by United and Wickes. This occurrence took place on October 7, 1962, and the claim is for $93,623 (¶ 159, Complaint). Once again plaintiff pleads the defense of wrongful release of a claim against United and Wickes based on the occurrence (¶ 163, Complaint), and then alternatively pleads the continued existence of rights against United and Wickes due to the defects in the boiler

and failure to use due care, to which plaintiff will be subrogated in the event of payment to Borden (¶¶ 166–168, Complaint).

Counts are pleaded against defendant Monochem in a similar fashion in connection with ten of Borden's thirteen claims.

Claim No. 1 as set forth, supra, involved the failure of superheater tubes in boilers owned and maintained by Monochem and supplying steam for Borden (¶ 15, Complaint).

Claim No. 2. Loss of $39,955 allegedly due to failure on June 3, 1962, of a shaft on a lubrication oil pump for Monochem's main air compressor, located at its oxygen plant (¶ 43, Complaint).

Claim No. 3. Loss of $27,052 allegedly due to failure on June 9, 1962, of a drive sprocket in a soot disposal system in equipment owned and maintained by Monochem and located at its acetylene plant (¶ 57, Complaint).

Claim No. 4. Loss of $14,358 allegedly due to failure on June 15, 1962, of a line strainer in a steam line in the acetylene plant owned and operated by Monochem (¶ 71, Complaint).

Claim No. 5. Loss of $27,754 allegedly due to failure on July 23, 1962, of a solenoid controlling Monochem's main air compressor located in its oxygen plant (¶ 85, Complaint).

Claims No. 7 and No. 8, involving Monochem, are set forth supra.

Claim No. 10. Loss of $627,383 allegedly due to explosion on October 8, 1962, in the area of the first stage of the "A" feed gas compressor in the Borden Methanol plant (¶ 209, Complaint) for which Monochem was required to supply "off gas" (¶¶ 253–257, Complaint).

Claim No. 11. Loss of $150,651 allegedly due to failure on November 23, 1962 and November 24, 1962, of the main and auxiliary lubrication oil pumps for Monochem's main air compressor, located at its oxygen plant (¶ 260, Complaint).

Claim No. 12. Loss of $27,055 allegedly due to failure on January 26, 1963, of the refrigeration compressor owned and maintained by Monochem at its vinyl chloride plant (¶ 274, Complaint).

With respect to each of these claims, plaintiff pleads in a manner similar to the form set forth supra in claim No. 1, pleading the release of Monochem on each claim as a defense to the policy claim and alternatively pleading the continued existence of rights of Borden against Monochem, to which plaintiff will be subrogated in the event of payment to Borden for the claim. Borden's alleged rights against Monochem arise from obligations assumed by Monochem as set forth in Paragraph 37 of the complaint and re-alleged in each Monochem count. Thus each count against Monochem in effect asserts that the occurrence resulted from a breach of one of Monochem's said obligations.

The "insurance defendants" are involved in the within litigation in a role different from that of the subrogation defendants.

Affiliated is not joined herein as a supplier of Borden against whom plaintiff may have rights by way of subrogation. Rather, plaintiff proceeds against Affiliated under the "other insurance" clause contained in the policy issued by plaintiff to Borden (¶ 106, Complaint) in view of the existence of two casualty policies issued to Borden by Affiliated (¶ 131, Complaint), which plaintiff alleges covered losses on various of Borden's claims.

Thus as to Bordens claims Nos. 6, 9 and 10 (Counts XV, XXV and XXIX), plaintiff alleges that if Borden actually suffered the claim loss (which, as set forth, supra, plaintiff denies with respect to each and every claim), such loss was covered by Affiliated Policies Nos. S 16101 and S 16109 to as great an extent as Borden claims its alleged loss was covered by plaintiff's policy (¶¶ 132, 204, 235, Complaint).

Accordingly, plaintiff asserts that its liability on the claim (if any) is limited to fifty percent (50%), and Affiliated is liable for the remainder, which both Affiliated and Borden deny. (¶¶ 133–134, 205–206, 236–237, Complaint.)

Defendant Blackstone assumes a dual role, both as an insurance defendant and as a subrogation defendant. It is involved only in connection with Borden's claim No. 10, which is for $627,383 and is based on a reported explosion in Borden's Methanol plant on October 8, 1962 (¶ 209, Complaint). Following the count pleaded against Borden as to this claim, plaintiff alleges in Count XXX that the claimed loss (if it occurred) resulted from fire and as such was within the two fire policies written by Blackstone and outside plaintiff's policy, which Blackstone denies. (¶¶ 241–242, Complaint).

Blackstone is alternatively involved with respect to the same Borden claim in the same manner as the subrogation defendants. Thus plaintiff alleges as a defense to Borden's claim No. 10, that it is unenforceable by reason of Borden's wrongful release or destruction of subrogation rights of plaintiff against Blackstone (¶ 214, Complaint). As an alternative allegation, plaintiff pleads the continued existence of rights of Borden against Blackstone, by reason of Blackstone's failure to perform with due care obligations of inspection which it allegedly undertook, causing the said occurrence (¶¶ 245–248, Complaint), and that in the event of payment to Borden on this claim plaintiff will be subrogated to Borden's rights against Blackstone (¶ 249, Complaint).

The non-moving defendants, Vulcan-Cincinnati Corporation and Catalysts & Chemicals, Inc., are involved in the litigation in a manner similar to that of the subrogation defendants United and Wickes, and involve Borden's claims Nos. 6, 9 and 10. These parties are attacking the jurisdiction of the Court over them and are accordingly not moving herein.

With the foregoing summary of the allegations in the complaint and the involvement of the moving defendants, I will now consider the applicable law.

The within action is brought under Section 2201 of Title 28 of the United States Code (28 U.S.C. § 2201 (1959)), which provides:

"In a case of actual controversy within its jurisdiction * * * any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

As noted above, the moving defendants assert that: (a) the Court lacks jurisdiction over the subject matter of the within action; and (b) the complaint fails to state a claim upon which relief can be granted.

It would appear that the defendants attack the jurisdiction of the Court not insofar as jurisdictional amount and diversity of citizenship are concerned, but rather on the grounds that the Court lacks jurisdiction over the subject matter since the present suit does not involve an "actual controversy" as required by the statute. Accordingly, the two assertions of defendants, i. e., lack of jurisdiction and failure to state a claim, will be viewed as one in the determination of the within motion, since if there is no "actual controversy" the Court not only lacks jurisdiction but the complaint fails to state a claim upon which relief can be granted as well.

■ It should be borne in mind, in analyzing the within issues, that the Declaratory Judgments Act is only procedural in its operation. It permits courts to grant relief only in cases within their jurisdiction, i. e., cases and controversies under Article III, § 2 of the Constitution of the United States. Thus, by the Act, Congress merely enlarged the remedies available in the federal courts but not the jurisdiction of the court itself. See Lizza & Sons, Inc. v. Hartford Acc. & Indem. Co., 247 F.2d 262, 264 (1st Cir.), cert. denied, 355 U.S. 906, 78 S.Ct. 332, 2 L. Ed.2d 261 (1957).

We accordingly must proceed to a determination whether a "controversy" exists between the parties, the word "con-

troversy" being used in a legal rather than a figurative sense; and, if so, the equally important corollary question—whether it is ripe for adjudication.

■ The test as to what constitutes an "actual controversy" is set forth in Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937). After ruling that the "word 'actual' is one of emphasis rather than of definition" (id. at 240, 57 S.Ct. at 463), the Supreme Court gave this controlling definition:

"A 'controversy' in this sense must be one that is appropriate for judicial determination. * * * A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. * * * The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. * * * It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Id. at 240–241, 57 S.Ct. at 464.

■ This distinction, however, between a controversy "appropriate for judicial determination" and "a difference or dispute of a hypothetical or abstract character" is easier stated than applied. The reason for this is that "[t]he difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

The difficulties inherent in the process have been aptly described by the Supreme Court. "Mr. Chief Justice Hughes [in Aetna Life Ins. Co. v. Haworth, supra,] used the whole catalogue of familiar phrases to define and delimit the measure of this new remedy. If its metes and bounds are not clearly marked, it is because his available verbal markers are themselves elastic, inconsistent and imprecise." Public Service Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 242, 73 S.Ct. 236, 240, 97 L.Ed. 291 (1952).

Defendants argue that plaintiff may not be liable to its insured at all, and that, accordingly, the matter in controversy between Lumbermens and them is contingent upon the happening of other events which may or may not happen and is not appropriate for judicial intervention as of this point.

For clarity's sake, the contention of plaintiff vis-a-vis the insurance defendants will be dealt with first, and then its contentions vis-a-vis the subrogation defendants, (bearing in mind that Blackstone's involvement falls within both classifications).

In addition to the requirement of an "actual controversy", the statute provides that "the rights and other legal relations of any interested party" may be declared.

Defendants must concede that at some time, if not now, plaintiff will become an interested party entitled to sue them on the Borden rights pleaded in the complaint if, in the interim, it pays Borden on the insurance claims. Defendants, however, assert that plaintiff may never have to pay Borden, and thus may never be subrogated to any rights against these third parties; they therefore argue that plaintiff is not at this point an "interested party" entitled to a declaration, binding on these defendants, of the status of its insured's rights against them.

It would thus appear defendants' position is that there is no controversy between plaintiff and them, since plaintiff

does not possess any rights against them as of this point; that the suit is premature and is a hypothetical one since the possibility upon which it is predicated may never come to pass, to wit, payment by Lumbermens to Borden.

Insofar as Affiliated is concerned, plaintiff alleges, and for the purposes of the motion, the allegations are, of course, admitted, (Ohio Cas. Ins. Co. v. Farmers Bank, 178 F.2d 570, 573 (6th Cir. 1949)), that the losses which form the basis of Borden's claims Nos. 6, 9 and 10 were covered by two policies issued by Affiliated to the insured to as great an extent as Borden claims its alleged loss was covered by plaintiff's policy.

Plaintiff then alleges that its applicable policy provided that, in the event a loss covered thereunder was also covered to as great an extent under a policy issued by another insurer, plaintiff's liability under its policy would be limited to fifty percent (50%) of said loss. Thus plaintiff asserts that, if the loss occurred and was within Lumbermens' policy, it was also covered to as great an extent under a policy issued by Affiliated, another insurer.

It would appear that, under the other-insurance clause, plaintiff would be entitled to recover from Affiliated as subrogee of Borden if it pays more than its share of any loss Borden has suffered with respect to the occurrences upon which Borden's claims Nos. 6, 9 and 10 are based. See, e. g., Liberty Mut. Ins. Co. v. Standard Acc. Ins. Co., 164 F.Supp. 261 (S.D.N.Y.1958), aff'd, 264 F.2d 671 (2d Cir. 1959); Southwestern Indem. Co. v. National Sur. Corp., 277 F.2d 545 (5th Cir. 1960); Commercial Standard Ins. Co. v. American Employers Ins. Co., 209 F.2d 60 (6th Cir. 1954).

In a suit by Borden on its insurance claims, Lumbermens would appear to have the right to implead Affiliated to require it to pay its share of the loss Borden asserts it has suffered by reason of the occurrences to which both Affiliated and Lumbermens policies allegedly apply. See Dixey v. Federal Compress & Warehouse Co., 140 F.2d 820 (8th Cir. 1944). Cf., Continental Cas. Co. v. Giller Concrete Co., 116 F.2d 431 (5th Cir. 1940), cert. denied, 313 U.S. 567, 61 S.Ct. 941, 85 L.Ed. 1525 (1941).

The problem, however, is whether plaintiff can, now, before it has paid the loss which its insurance contract covers, have this Court declare that, in the event payment is made, Affiliated will be liable for half the amount paid, although its rights to that fifty percent (50%) will arise only if and when it pays its insured.

A declaration of non-liability is clearly within the ambit of justiciability. Aetna Life Ins. of Hartford, Conn. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937). See generally, Borchard, Justiciability, 4 Univ.Chi.L.Rev. 1 (1936). This declaration of non-liability has arisen most often in automobile accident cases where a demand is made upon the insurance company to defend the action, and it brings a declaratory judgment suit to determine whether it is liable under its policy of insurance to defend and/or pay. See, e. g., Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941).

However, declaratory judgment suits have been permitted when the policy obligates it to defend, even when no demand to defend a pending action has been made. See, e. g., Ohio Cas. Ins. Co. v. Plummer, 13 F.Supp. 169 (S.D.Tex. 1935); Ohio Cas. Ins. Co. v. Humphrey, 13 F.Supp. 174 (S.D.Tex.1935); Borchard, Declaratory Judgments, 635–37 (2d ed. 1941); cf., United States Fid. & Guar. Co. v. Koch, 102 F.2d 288 (3d Cir. 1939).

In other insurance areas, notably life insurance, declarations of non-liability to pay have been permitted after an occurrence and before formal demand has been made or action instituted against the insurance company. Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937); see generally, Borchard, Justiciability, 4 Univ.Chi.L.Rev., supra, at 10–29.

What plaintiff seeks here is a declaration that it is only liable to pay fifty percent (50%) of the loss which allegedly occurred, the other fifty percent (50%) falling on the shoulders of the other insurance company which covered the risk.

In Maryland Cas. Co. v. Hubbard, 22 F.Supp. 697 (S.D.Cal.1938), the Maryland Casualty Company (hereinafter referred to as "Maryland") brought a declaratory judgment suit against the injured party, its insured and the Employers Liability Assurance Corporation (hereinafter referred to as "Employers"), to determine its rights and liabilities under an insurance contract it had issued.

The accident upon which the action was predicated occurred when one Blackwell, an employee of Ridgway Audit, Inc., Maryland's insured, borrowed a Ford automobile from one Petronovich, who had obtained insurance from Employers, and while driving with Petronovich's consent, struck and injured the defendant Hubbard. Hubbard sued Blackwell, and Ridgway Audit, Inc., for his injuries.

Maryland contended that its insurance was excess to Employers primary coverage. Employers was tendered defense of the suit but refused.

Employers' position was that only after Hubbard secured a judgment against Ridgway, and Maryland pays it, would it be subrogated to whatever right of action Ridgway had against Employers by reason of the Petronovich policy. This right, Employers asserted, was purely contingent and dependent upon the happening of future events which had not yet occurred, or upon an issue which had not yet ripened and, accordingly, was outside of the power of the Court to determine through a declaratory judgment.

The Court, after observing that a declaration of non-liability is clearly justiciable, which would create a controversy between Maryland and its insured, went on to discuss the main problem presented, to wit, the "right" upon which Maryland predicated the existence of a "controversy" between it and Employers, and whether that controversy was ripe for determination.

The Court observed that if Maryland were compelled to pay the loss by reason of its coverage, it would be subrogated to the rights of its insured against the other insurance company.

Thus its present rights against Employers were contingent upon its being required to pay for the loss. In the context of our case, Lumbermens' rights against Affiliated are equally contingent upon its being required to pay the loss claimed. This contingency, of course, may or may not occur. However, as the Court stated in the Hubbard case, supra, a declaration of rights has often been allowed though liability had not yet been fixed. (Id. at 700.)

After citing numerous cases wherein rights were declared though contingent, the Court stated, in language particularly relevant to the instant case:

"While the defendant-insurer may not be liable, *at present*, to the plaintiff, it is as much interested in the determination of that liability as the plaintiff. And, as the determination of its liability might affect adversely that of the plaintiff, the controversy is ripe for determination. Borchard, Declaratory Judgments (1934) pp. 35, 40, 42.

"Grant [sic] that the defendant-insurer is not an indispensable party, it is, at least, a proper party." (Id. at 702.)

The Court further held that the rules of joinder, (presently embodied in Rule 20 of the Federal Rules of Civil Procedure):

"[W]arrant the joinder as defendants, of parties whose interest *might*, under certain contingencies, be adverse to that of the plaintiff, or whose present obligation towards the plaintiff is merely potential. * * * Bossak v. National Surety Co., 205 App.Div. 707, 200 N.Y.S. 148 (1923) * * *.

"Courts have found no difficulty in carrying over these principles into the declaratory judgment field, when the statute contained no rules of joinder of its own. When they have done so, they have made community of interest in a question of fact or law the test of joinder. * * *

"This is the test of permissive joinder in equity. Under it, liability for a proportionate share of loss under separate policies of insurance has been held to justify the joinder of several insurers as defendants. American Central Insurance Co. v. Harmon Knitting Mills, 1930, 7 Cir., 39 F.2d 21. Like joinder has been allowed under a declaratory judgment statute. Bossak v. National Surety Co., supra.

"So we have this situation: The two liability policies, while not establishing a direct contractual relationship between the plaintiff and the defendant-insurer, are yet interrelated because of the obligations assumed in them by the two insurers towards others, which may end in an obligation towards each other. The performance of the plaintiff's obligation and the extent of its liability is made dependent upon the existence of the defendant-insurer's contract." Ibid. (Emphasis added.)

In essence, then, what plaintiff wants with respect to Affiliated is a declaration, analogous to what was sought in Hubbard, of non-liability for fifty percent (50%) of the claimed loss.

Concededly, the Hubbard case involved a declaration of non-liability to defend as well as to pay the judgment. However, the issue of defense as opposed to payment goes not to the existence of rights and "controversy" but rather to the immediacy and the maturity of the claim—the non-liability for defending being a question of immediate determination whereas the non-liability for payment is arguably a question for determination after judgment is entered. The case is important, however, because it was the contingent right of subrogation upon which the Court in part predicated its decision that the case came within the ambit of the Declaratory Judgments Act.

Furthermore, so long as contingent rights can form the basis upon which a controversy can be predicated (Maryland Cas. Co. v. Hubbard, supra; see Franklin Life Ins. Co. v. Johnson, 157 F.2d 653 (10th Cir. 1946); cf., cases cited infra at 39–45), the question of ripeness for determination is an issue going to the Court's discretion rather than its jurisdiction. Borchard, Declaratory Judgments, 61 (2d ed. 1941). See generally, Byers v. Byers, 254 F.2d 205, 208–210 (5th Cir. 1958); United States Fid. & Guar. Co. v. Koch, 102 F.2d 288, 292–295 (3d Cir. 1939).

Other courts have, though in distinguishable contexts, permitted similar declarations between two insurance companies.

In American Fid. & Cas. Co. v. United States Fid. & Guar. Corp., 305 F.2d 633 (5th Cir. 1962), an automobile insurance company sought a declaratory judgment that it was an excess insurer, not the primary one.

The controversy arose in the following manner: On June 24, 1957, Garrard, the insured of American (the insurance covering a fleet of trucks), leased a truck to Bryan, the insured of United States (the clause in its policy providing that as to a hired vehicle its insurance would be excess). Latham, an employee of Bryan, while driving the truck, had a collision resulting in injuries and damage.

Suits were filed in Kentucky against Latham, Bryan and Garrard, that court granting summary judgment in favor of Garrard, determining that it had no liability on account of the accident. American refused to defend the suit and United States defended it under a reservation of right.

In its petition, United States asserted that, in the event of any payment under the policy, it would be subrogated to all the rights of the insured, including Bry-

an and Latham, to recover against any other party.

After discussing generally the equitable nature of the subrogation doctrine, the Court went on to observe that the remedy of declaratory judgment has been used in disputes between two automobile insurance companies where two policies cover the same risk. The Court then held "that it had jurisdiction." Id. at 635.

The full scope of the holding, however, is best revealed by the language in the dissenting opinion of Judge Brown. His dissent at the bottom of page 637 and the top of page 638, reveals that the basis for the opinion of the majority, while not articulated, is very much in point and is persuasive authority for the finding of subject-matter jurisdiction herein.

Thus, as between Lumbermens and Affiliated, there exist contingent rights which can, in my opinion, form the basis of a declaratory judgment action to declare those rights and liabilities. Maryland Cas. Co. v. Hubbard, supra; cf., cases cited infra at 39–45; but cf., Travelers Indem. Co. v. Standard Acc. Ins. Co., 329 F.2d 329 (7th Cir. 1964).

 There exists an "actual controversy" between Lumbermens and Affiliated within the ambit of the declaratory judgment statute. See, e. g., West American Ins. Co. v. Allstate Ins. Co., 295 F.2d 513, 516 (10th Cir. 1961) and cases cited therein; American Fid. & Cas. Co. v. St. Paul-Mercury Indem. Co., 248 F. 2d 509, 518 (5th Cir. 1957); London Guar. & Acc. Co. v. Shafer, 35 F.Supp. 647 (S.D.Ohio 1940); cf., McPherrin v. Hartford Fire Ins. Co., 44 F.Supp. 674, 675 (N.D.Cal.1942); Annot. 142 A.L.R. 8, 15, 16 (1943).

The issue of ripeness of adjudication, i. e., the discretion of the Court, though interrelated to an extent with the issue of "actual controversy" (Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)), will be treated separately. The self-same factors are involved in deciding this discretion issue, as it relates to all

the subrogation defendants as well as Affiliated.

 In addition, under Rule 20(a) of the Federal Rules of Civil Procedure, a person having an interest in the subject matter of the litigation which may be conveniently settled in the action, is a proper party to, and may be joined as a defendant in, an action—provided there is asserted against him and other defendants any right to relief presenting common questions of law and fact arising out of the same transactions, occurrences or series of transactions or occurrences. While Affiliated may not be liable at present to plaintiff, it is as much interested in the determination of that liability as plaintiff. Maryland Cas. Co. v. Hubbard, supra, 22 F.Supp. at 702. "And, as the determination of its liability might affect adversely that of the plaintiff, the controversy is ripe for determination." (Ibid.) The controversy between plaintiff and Affiliated had a common source and occurrence, namely, the occurrence forming the basis of Borden's claims Nos. 6, 9 and 10. Plaintiff asserts a right against Affiliated and Borden presenting a common question of law and fact, and Affiliated's position is clearly hostile to that of plaintiff. Accordingly, Affiliated is properly joined as a party under Rule 20(a) of the Federal Rules of Civil Procedure. See Great American Ins. Co. v. Harleysville Mut. Cas. Co., 285 F.2d 262 (4th Cir. 1961); Maryland Cas. Co. v. Hubbard, supra; cf., Maryland Cas. Co. v. Texas Co., 114 F.2d 952 (8th Cir. 1940); Cyclopedia of Federal Procedure § 90.73 at 921 (3d ed. 1964); Comment, Developments—In the Law—Declaratory Judgments—1941–1949, 62 Harv.L.Rev. 787, 850 (1949); see also United States Fid. & Guar. Co. v. Ditoro, 206 F.Supp. 528 (M.D.Pa.1962).

 We next proceed to defendant Blackstone. It has been joined in this litigation only in connection with Borden's claim No. 10. That claim is for a loss of $627,383 allegedly due to an explosion on October 8, 1962.

Blackstone is joined herein as a defendant in the capacity as an insurer

against loss and as a subrogation defendant. Its subrogation status will be discussed later when the question of the other subrogation defendants is disposed of.

Plaintiff, on claim No. 10, alleges that the reported occurrence resulted from an explosion within the exclusion and outside the coverage of plaintiff's policy under which this claim was made by Borden. Then, in pleading against Blackstone, plaintiff alleges that the reported Borden loss, being a fire loss, is within Blackstone's fire policies issued to Borden.

Thus, as to Borden's claim No. 10, there is a fact question common to Borden, Blackstone and plaintiff, to wit, was the reported event of October 8, 1962, a "fire" so that it falls within Blackstone's policy, or was it an "explosion" making plaintiff liable?

Rule 20(a) of the Federal Rules of Civil Procedure provides:

"* * * All persons may be joined in one action as defendants if there is asserted against them jointly, severally, *or in the alternative,* any right to relief in respect of or *arising out of the same transaction, occurrence,* or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action. A plaintiff or defendant need not be interested in obtaining or defending against all the relief demanded." (Emphasis added.)

Plaintiff, as support for its inclusion of Blackstone, cites Great American Ins. Co. v. Harleysville Mut. Cas. Co., 285 F. 2d 262 (4th Cir. 1961). There Great American sought a declaration that it had no liability with respect to a collision involving a car which it insured, owned by one Grant. The car was being driven by one Early, who allegedly had stolen it. Early himself carried liability insurance with another carrier, defendant Harleysville. Great American, in its declaratory judgment suit, named Early,

the collision victims and Harleysville as defendants.

In the District Court, Harleysville argued thusly:

"* * * [T]here is no controversy between [Harleysville] * * and Great American and hence it [Harleysville] is not a real party in interest in the case. It says that the liability of each of the insurance companies depends on whether Early had permission to drive Grant's car. If he had permission the Great American policy completely covers the case, since the damages fall within the limits of its policy, and Harleysville is relieved of all liability since its policy only covers loss in excess of other insurance. On the other hand, if Early did not have permission to use the car Great American has no liability to the injured persons and Harleysville must pay the loss up to the limits of its policy. In neither event would either insurance company have any claim against the other." (Id. at 263.)

The District Court dismissed the action on this analysis. The only question on appeal was "the propriety of retaining Harleysville as codefendant in the case." (Ibid.)

The Court of Appeals reversed, stating:

"We are, however, of the opinion that Harleysville has such a direct interest in the controversy as to make it a proper party in the case. Its liability depends upon the finding which must be made as to Early's permission to drive Grant's car. The determination of this question will decide which one of the two insurance policies covers the accident, and hence it is clearly proper for Harleysville to take part in the trial of this issue. * * * Harleysville is a proper party to the case and doubtless would have been permitted to intervene if it had not been sued originally.

\* \* \* \* \* \*

"In our opinion the case falls within Rule 20(a) of the Federal Rules of Civil Procedure entitled Permissive Joinder of Parties, which provides that all persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative any right of relief arising out of the same transaction and if any question of law or fact common to all of them will arise in the action. Obviously Early's permission to drive the car is a question of fact common to all of the parties to the case, including Harleysville, and its position on this point is necessarily hostile to that of Great American. Clearly it was proper that Harleysville be joined as a party-defendant in order that the whole controversy should be settled in one action." See also United States Fid. & Guar. Co. v. Ditoro, 206 F.Supp. 528 (M.D. Pa.1962). Id. 285 F.2d at 263–264.

Accordingly, it would appear that Blackstone is a proper party-defendant herein.

The subrogation defendants, United, Monochem, Wickes and Blackstone, argue in a similar vein, as did Affiliated, to wit, that as to them the suit is premature and hypothetical since Lumbermens may have an action against them if it is required to pay Borden on Borden's suit, an eventuality which may or may not come to pass. They accordingly submit that, as of the moment, plaintiff has not stated a claim upon which relief can be granted.

As noted above, insofar as these defendants are concerned, plaintiff pleads in the alternative. It first pleads, in defense of the Borden claim, that Borden released certain rights that it had against these defendants individually, thereby defeating any subrogation rights which the plaintiff would have had against the defendants—which allegations, if proven, would constitute a defense to the respective Borden claims. As an express alternative to these allegations, plaintiff asserts the continued existence of rights against these defendants arising from the subrogation clause and seeks a declaration of those rights. Thus plaintiff asks this Court to declare whether or not defendant Borden released rights it had against these defendants and/or to declare the nature and extent of the rights which Borden and plaintiff, by way of subrogation, have against these defendants.

Initially, it seems clear that if plaintiff cannot join these defendants in the within action it will be greatly prejudiced on the issue of the existence or nonexistence of a valid release. For it is entirely possible that, in the two-party action between plaintiff and Borden, the Court will determine that there was no release of any rights by Borden, that accordingly it has not breached its policy, and that Lumbermens must pay for the loss. Subsequently, however, and after payment, when Lumbermens seeks to enforce its subrogation rights against these defendants, they may then assert the existence of a valid release by Borden, which would, of course, be a defense to Lumbermens' action against them. That the prior determination of the non-existence of a release, in a suit between Lumbermens and Borden, is not binding upon these defendants, who were not parties to the action, cannot be disputed. See, e. g., Pharr v. Canal Ins. Co., 233 S.C. 266, 104 S.E.2d 394 (1958).

In fact, defendant Wickes, in its reply memorandum, makes the following statement:

"The cases cited by the plaintiff arguably might support the maintenance of a suit for declaratory judgment upon the single issue of whether plaintiff had no liability to Borden because Borden had released, waived, abandoned, destroyed or otherwise prejudiced any rights which it might have against the other defendants and to which plaintiff might become subrogated in a District Court where jurisdiction could be obtained against all parties sought to be bound by such a de-

claratory judgment; * * *." (Wickes' Reply Memorandum, at 5–6.)

It further seems clear that this is the only jurisdiction and the only suit wherein a binding determination, binding on all the parties, can be made, since in the pending Louisiana suit some of the within defendants are not amenable to the Court's jurisdiction.

In Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941), the plaintiff insurance company sought a declaratory judgment as to its obligations under an automobile liability policy. One Orteca claimed damages from the insured Pacific, arising out of a collision involving a truck driven by one of Pacific's employees. Maryland Casualty joined Pacific and Orteca as defendants, and asked a declaration as to whether it was obliged to defend Pacific against Orteca's claim or indemnify Pacific if Orteca recovered on his claim. The Court of Appeals had affirmed a dismissal as to Orteca on the ground that no controversy existed between him and the insurance company since Orteca had not recovered any judgment against Pacific and had not yet asserted any claim against the insurer.

The Supreme Court reversed with the following statement:

"It is clear that there is an actual controversy between petitioner and the insured. * * * If we hold contrariwise as to Orteca because, as to him, the controversy were yet too remote, it is possible that opposite interpretations of the policy might be announced by the federal and state courts. For the federal court, in a judgment not binding on Orteca, might determine that petitioner was not obligated under the policy, while the state court, in a supplemental proceeding by Orteca against petitioner, might conclude otherwise. * * *

"Thus we hold that there is an actual controversy between petitioner and Orteca, and hence, that peti-tioner's complaint states a cause of action against the latter." (Id. at 274, 61 S.Ct. at 512.)

If the Maryland holding, supra, is viewed as inferring that there is an "actual and immediate controversy between the insurer and the insured, the * * * [third party] being joined as a necessary and proper party in order that the court may be enabled to give more complete relief," (Indem. Ins. Co. of North America v. Kellas, 173 F.2d 120, 124 (1st Cir. 1949)), this fact would still not detract from its applicability to the situation presented herein.

The subrogation defendants are obviously "interested" (see Franklin Life Ins. Co. v. Johnson, 157 F.2d 653, 657 (10th Cir. 1946)) in the outcome of the issue whether a valid release was entered into since, if that determination be in the affirmative, they are forever protected from suit based on their alleged negligence. Furthermore, it has been held, though concededly in distinguishable circumstances, that "all persons who have an interest in the determination of the questions raised in the declaratory judgment suit should be before the court or the determination by the court is ineffective. It would result in but a partial disposition of the controversy. Obviously such should be avoided." Indiana Lumbermens Mut. Ins. Co. v. Passalacqua, 27 Misc.2d 405, 406, 208 N.Y.S.2d 1006, 1007 (S.Ct.1960).

In this regard, Professor Borchard, in his treatise on Declaratory Judgments, supra, in discussing joinder of parties, states:

"The provision of Rule 20 as to *proper* parties is more flexible and represents a more radical advance in the law. * * * [I]n many cases a person is joined as defendant not for the purpose of seeking any relief against him, but merely to give him an opportunity to appear and more especially to make the judgment against the principal defendant binding upon him." (Id. at 259–60.)

In view of the foregoing considerations, to wit, the real hazard of prejudice to plaintiff by inconsistent piece-meal determinations, if joinder is not permitted, and the inability to give "complete relief" absent these defendants, it would appear that these defendants are properly included in the within action. Cf., Manufacturers Cas. Ins. Co. v. Coker, 219 F.2d 631, 634 (4th Cir. 1955).

Insofar as the "subrogation" relationship of these defendants to the within action is concerned, to wit, the alternative theory pleaded against them, they argue, as did Affiliated, that until payment there are no rights against them and, at the present stage of the proceedings, the "controversy" is purely hypothetical and premature.

The fact that plaintiff does not presently have a cause of action against these defendants until it pays its insured is not determinative. The whole reason for the enactment of the statute was to declare the rights of parties and grant further and proper relief, though in a strict sense no cause of action had accrued. See Dotschay for Use and Benefit of Alfonso v. National Mut. Ins. Co., 246 F.2d 221 (5th Cir. 1957).

The reasoning set forth, supra, with respect to Affiliated is equally applicable herein.

It is apparent that plaintiff does have rights, though they be contingent against these defendants. The rights asserted in the complaint, and accepted as true, arise from the fact that any loss suffered by Borden is as a result of the negligence of these defendants.

Furthermore, at some time, if not now, plaintiff will be able to maintain an action against these defendants based on those rights.

The issue presented, then, is whether these contingent rights which exist against these defendants (contingent on payment being made to the insured) can form the basis of a declaratory judgment at this time, declaring those rights.

In Ohio Cas. Ins. Co. v. Farmers Bank, 178 F.2d 570 (6th Cir. 1949), an insurer was allowed to maintain a declaratory judgment against its insured (a bank) and various injured parties to determine its liability for an alleged embezzlement of Price, a deceased bank employee, and was permitted to join Price's administratrix as well.

"The complaint sought declaratory judgment as to (1) whether the bank is liable to the mill and, if so, in what amount; (2) whether appellant is liable to the bank for the whole or any part of the amount found to be due by the bank to the mill; and (3) whether George E. Price 'was responsible for the loss sustained by the Bank in the Mill account and the loss sustained by this plaintiff through the dishonest, fraudulent, or criminal act or acts of George E. Price, and if so, the amount of such loss so sustained, and if it be adjudged that this plaintiff is liable to the Bank for any loss so caused by George E. Price, that such amount be ascertained and this plaintiff be given judgment against Mary C. Price, Administratrix of the Estate of George E. Price, and for all proper relief." Id. at 572–573.

The Sixth Circuit reversed a dismissal as to Price's administratrix, holding that there existed an "actual controversy" between her and the insurer on the following reasoning:

"The amended petition of appellant makes it plain that George E. Price was acting as a fiduciary of both the bank and the mill. The purpose of appellant in making his administratrix a party to the declaratory judgment suit apparently was to determine whether he was unfaithful in his trust in such a manner and to such extent as to impose liability under its bond and, *if liability should be imposed, to give the insurer the opportunity of proceeding against Price's estate for reimbursement.*" (Id. at 576.) (Emphasis added.)

While the case is distinguishable in that it involved a fidelity bond and the insurer would be liable to the extent only of Price's infidelity, it is still some authority for the position of plaintiff herein. For it permits the assertion of rights in a declaratory judgment action against a third-party wrongdoer *prior* to payment by the insurer. The Court permitted joinder to determine whether Price was unfaithful to such an extent as to render the bank liable and for the further purpose of permitting the insurer, in this one declaratory judgment action, to proceed against his estate. In that sense it supports by analogy plaintiff's position herein, since presumably the right to reimbursement against Price matured after payment. Clearly, prior to payment, the insurer could not have maintained a plenary suit against Price.

The arguments advanced herein by defendant Wickes distinguishing the foregoing above-cited case point out the fact that it was a stronger case for entertaining jurisdiction but such arguments by no means preclude plaintiff from maintaining the instant action.

In Alexander City v. Continental Ins. Co., 262 Ala. 515, 80 So.2d 523 (1953), the Supreme Court of Alabama reversed the lower court's dismissal of a declaratory judgment action in which suit was brought by an insurer against its insured and the allegedly negligent City of Alexander.

The action sought a declaration that the insurer was not liable under its explosion policy for an alleged explosion by reason of the fact that no damage was sustained by the insured. The bill then set out a provision in the policy contract with the insured whereby the insurer was given the right to require from the insured an assignment of all rights of recovery against any party for loss to the extent that payment is made to the insured by the company. It then alleged that if any damage was done to the insured's home it was by reason of the wrongful and negligent blasting operations of the city which is primarily responsible for it. It further alleged that there was a justiciable controversy between the complainant insurance company and the insured, and sought to have a declaration on that controversy. It prayed that if the Court decreed against complainant insurance company the Court then adjudge and decree that complainant be subrogated to the claim of the insured against the city and also determine whether the city is liable for the wrongful and negligent damage to the house in question. The Court held that the claim for supplemental relief stated a valid cause of action against the city and that the demand for declaratory judgment was proper.

Furthermore, declaratory judgment suits have been permitted based on rights, either express or implied, of indemnification.

In Rimington v. General Acc. Group of Ins. Cos., 205 Cal.App.2d 394, 23 Cal. Rptr. 40 (3d Dist. 1962), the Stockton Husk Company filed a complaint against various insurance companies and appellant Rimington by which it sought a declaration of rights and liabilities based on a fire which destroyed its insured crop of corn. The alleged controversy was that defendant insurance companies contended their policies were not in existence at the time of the fire. Rimington was the alleged agent who sold these policies to plaintiff. Two of the insurance companies denied that Rimington was an authorized agent; the third admitted the agency but denied that Rimington was acting in its behalf in insuring the crop.

Subsequently, Rimington filed a cross-complaint against these insurance companies wherein he sought a judgment declaring the rights and liabilities of cross-defendants—"that if the Court determined that any sum was due plaintiff, the court should determine that the liability is that of cross-defendants; that he was entitled to be *indemnified* by cross-defendants in the amount of any judgment that might be rendered against him; and that he was entitled to dam-

ages for loss of reputation \* \* \*." Id. at 395, 23 Cal.Rptr. at 41.

The cross-defendants moved to strike the cross-complaint as being *inter alia* premature, i. e., "that the right to sue for indemnity could arise only when payment had been made by the indemnitee \* \* \*." Id. at 396, 23 Cal.Rptr. at 41. The lower court struck the cross-complaint.

The Court of Appeals reversed, in language relevant to the issues presented herein:

"The allegations here leave no doubt of the asserted existence of an actual controversy between the parties.

"The issue of *possible* indemnification would be a justiciable controversy involving the insurance companies and their alleged agent, concerning the legal relations and rights arising out of the transaction of the main action.

"Furthermore, inasmuch as Rimington is seeking declaratory relief it is immaterial that no judgment has been rendered. The purpose of a declaratory judgment is to settle actual controversies before they have ripened into a violation of a contractual obligation." Id. at 397, 23 Cal.Rptr. at 42. (Emphasis added.)

B. F. G. Builders v. Weisner & Coover Co., 206 Cal.App.2d 752, 23 Cal.Rptr. 815 (5th Dist. 1962) permitted a cross-complaint in the form of a declaratory judgment to be filed by a roofing contractor sued by a home owner for negligence. The contractor cross-complained against the supplier of various materials for a declaration "that if such a verdict is rendered against B. F. G. Builders, a Corporation, it will have a right of indemnification and/or contribution from Wiesner [sic] \* \* \*." Id. at 756, 23 Cal.Rptr. at 817.

It further alleged that the ultimate responsibility to the plaintiff, if any, rested on the cross-defendants and in its prayer for relief; it requested that if the Court find any sum due to plaintiff "that this Court find, declare and ad-judge that such liability be that of the cross-defendants \* \* \*." Id. at 756, 23 Cal.Rptr. at 818.

Similar holdings, to the effect that a cross-complaint for declaratory relief is an appropriate way of having this right to indemnity (which accrues after payment) determined prior to payment, can be found in Horn & Baker, Inc. v. Macco Corp., 39 Cal.Rptr. 320 (2d Dist.Ct.App. 1964); Herrero v. Atkinson, 38 Cal. Rptr. 490 (1st Dist.Ct.App. 1964); J. C. Penney Co. v. Westinghouse Elec. Corp., 217 Cal.App.2d 834, 32 Cal.Rptr. 172 (1st Dist. 1963); Dreybus v. Bayless Rents, 213 Cal.App.2d 506, 28 Cal.Rptr. 825 (4th Dist. 1963); Vegetable Oil Prod. Co. v. Superior Court, 213 Cal.App. 2d 252, 28 Cal.Rptr. 555 (2d Dist. 1933).

Roylance v. Doelger, 57 Cal.2d 255, 262, 19 Cal.Rptr. 7, 11, 368 P.2d 535, 539 (1962) involved "basically a controversy between an insured, its alleged liability insurer, and third parties whom the defendant insurer by cross-complaint claims were the real tort feasors ultimately liable to the injured persons." The Court therein permitted the insurer, in a suit between the insured and the insurer, to cross-claim against these third parties, not parties to the action, who it claimed were responsible for injuries for which the *insured* had paid. See also Lewis v. United Air Lines Transport Corp., 34 F.Supp. 124 (D.Conn.1940); Borchard, Declaratory Judgments, 273 (2d ed. 1941).

As is obvious, these cases arose under state practice in distinguishable contexts. However, in interpreting the breadth to be given to the Declaratory Judgments Act, state "jurisprudential experience [is] \* \* \* of great assistance to federal courts in their interpretation and application of the federal Act" (6 Moore Federal Practice, ¶ 57.02 [1] at 3005 (2d ed. 1953); see id. at ¶ 57.02[5]) and serve as "a *guide* to the scope and function of the federal Act." Ibid.

Accordingly, while the above-cited cases are not binding on this Court, nor are they directly in point, they are none-

theless persuasive and sufficiently analogous to serve as "a *guide* to the scope and function of the federal Act." 6 Moore, supra, ¶ 57.02[1] at 3005.

Thus, there exist contingent rights which can form the basis of a declaratory judgment. Whether the controversy between the parties, based on these rights, is of sufficient immediacy to warrant a present declaration of these rights is an issue, as noted above, going to the Court's discretion rather than to its jurisdiction, and the determination of necessity rests upon the particular circumstances presented by each individual case.

It would appear, then, that the main thrust of the respective defendants' arguments, while couched in jurisdictional terms, must go rather to the discretion of the Court to stay its hand since, as they argue, the controversy is not presently ripe for adjudication.

What plaintiff seeks is an adjudication of the status of Borden's rights vis-a-vis the subrogation defendants. To this it is clearly entitled. However, should these defendants be joined so as to make this determination binding on them as well? Can the status of these rights be adjudicated *in vacuo*? In other words, can the Court declare the continued existence of rights against these defendants, (i. e., that there was no release,) without determining whether there are any rights at all against them (which could have been released)? This, in essence, is what defendant Wickes argues.

Insofar as the issue of release is concerned, the Court's discretion should most assuredly be exercised in favor of the within action in view of the hazard to plaintiff of inconsistent piecemeal adjudications. That issue, however, cannot adequately be decided, nor should it be, without a determination of what rights in fact exist.

It is not apparent how this Court can be called upon to decide the status of Borden's rights on the issue of release without deciding the necessary question of whether Borden presently has enforceable rights against the subrogation defendants. Plaintiff has drawn its complaint interrelating its alternative theories of declaration. The two theories are so interrelated that in logic, if not in law, the entire issue should be decided together.

The impleader analogy utilized by the moving defendants, while not controlling, is helpful in guiding the Court in the exercise of its discretion.

The defendants cite Ross v. Pawtucket Mutual Ins. Co., 13 N.Y.2d 233, 246 N.Y.S.2d 213, 195 N.E.2d 892 (1963), in support of their argument that, prior to payment, the insurer has no right to proceed against tort-feasors even by way of impleader.

The Ross decision has by no means been accepted as the last word on the subject, and its impact has been narrowed both judicially (see Sol Lenzer Corp. v. Aetna Cas. Ins. Co., 20 A.D.2d 305, 246 N.Y.S.2d 950 (4th Dep't 1964) (Per curiam)), and extra-judicially (see New York Civil Practice Law and Rules, § 1007, Supplementary Practice Commentary (Supp.1964); Siegal, A Biannual Survey of New York Practice, 38 St. John's L.Rev. 406, 421 (1964)).

In any event, the Ross decision is not binding on this Court insofar as the propriety of impleader is concerned.

"When a New York court determines the right of a defendant to implead a third-party on the basis of the allegations in the complaint, it does not pass upon the ultimate substantive rights of the defendant against that third party. It merely determines whether any such rights may be asserted in the pending action. It is dealing with a matter of procedure and specifically the timing of the assertion of the defendant's claims against the third party. * *

"Since the question of when to allow or disallow impleader (so that all possible issues may be determined in one action) is procedural, we are not bound by New York

Procedure and may look to federal procedure on this point." Yanick v. Pennsylvania R. R., 192 F.Supp. 368, 370 (E.D.N.Y.1961); see Glens Falls Indem. Co. v. Atlantic Bldg. Corp., 199 F.2d 60 (4th Cir. 1952).

It is clear that under Rule 14 of the Federal Rules of Civil Procedure, Lumbermens could implead these subrogation defendants. See, e. g., Concordia College Corp. v. Great American Ins. Co., 14 F.R.D. 403 (D.Minn.1953).

The problem, however, is that in the two-party actions pending in Louisiana between Borden as plaintiff and Lumbermens as defendant, some of these other subrogation defendants cannot be impleaded because they are not amenable to service and therefore are not subject to the Court's jurisdiction.

The Court is thus presented with the following situation:

A suit between two parties pending in another jurisdiction. Third parties, who could properly be impleaded in that suit, are not present before that Court because they are not amenable to service in that jurisdiction. There are issues to be litigated directly affecting these defendants. These issues deal with the question whether rights against them were released, which fact would insulate them from further liability. This issue should not be litigated without their presence. In addition, of necessity much evidence and testimony will be taken relating to the very occurrences for which it is alleged they are responsible; various officers of said corporations will, of course, be witnesses in the two-party action. Furthermore, if they are not parties to the action they are not bound by it and can take a position contrary to any determinations made in the two-party action, to the prejudice of the insurer, Lumbermens. True, the issue of their liability may never be reached if it is found that Lumbermens is not liable, and some issues peculiar to the policy, rather than the occurrence itself, are issues with which they have no interest. However, these arguments can be raised in every case wherein a third party is

impleaded by a defendant and should not form the basis of a discretionary dismissal of the suit. If anything, it is a cause for ordering a separate trial under Rule 14(a) of the Federal Rules of Civil Procedure. In any event, the question of whether the issues are so complicated as to require separate trials is one that cannot presently be decided. If, as the pretrial procedure progresses, the defendants are so advised, they, of course, may move either under Rule 20(b) or Rule 42(b) of the Federal Rules of Civil Procedure.

Since the crux of the within action is based primarily on occurrences and the part played therein by these defendants, not only insofar as their liability for them but also insofar as the release to them of rights possessed by the insured, the Court's discretion should be exercised in favor of their inclusion. This would prevent the duplication of evidence, testimony and time and labor on the part of all parties, not only plaintiff Lumbermens.

On this issue of discretion to retain the action, however, I am very strongly persuaded by the observations of Judge Gordon West at the hearing in Louisiana of Borden's motion to stay this New York action.

Judge West viewed the issue presented as follows:

"I think the important part is whether or not justice can better be done by having the matters proceed with here and leaving the possibility of additional suits, some of which may be subrogation, some of which may be direction actions because of other insurance—but nevertheless evolving out of the same problem— or whether or not it would be better to have it decided in one suit. That is clearly the issue." (Transcript of Oral Hearing, The Borden Co. v. Lumbermens Mut. Cas. Co., Civil Action 2974, 2983 at 6 (June 10, 1964, before West, J.)

He then asked the attorney for Borden why "it should be better to stay the cases in New York and not try these

cases with all of the parties before the Court and dispose of every claim at once, as opposed to having this Court decide certain claims and then leaving the door open to go back to New York to finish up the suits, which as I understand, would require the evidence all over again; for instance, against the boilermaker you would have to have the same evidence?

\* \* \* \* \*

It seems to me that the second suit in New York [this omnibus multi-party action] was filed for the purpose of bringing in these additional parties that might be involved in this law suit as claims over \* \* \*." (Id. at 6–7.)

The point of obvious concern to Judge West was "the other parties who are not and cannot be made parties to the Louisiana suit." (Id. at 17.)

He then made the following statement particularly relevant to the issues presented herein:

> "It seems to me that we are just asking for multiple litigation because I don't believe that you could successfully maintain that these other defendants who have been joined are not properly joined, if they are joined for instance as third party defendants for judgment over against. It seems to me that the very purpose of these procedural rules is to allow all of these things to be adjudicated at one time. For instance, take the manufacturer of the boilers. Now, of course, in the initial suit that is one of the issues involved; the question I'm sure will be what caused these explosions, whose fault is it? Was it the fault of the boilermaker? If the boilermaker, manufacturer of the boilers is not before the Court you still would have to prove the cause of the accident, I'm sure. I have never seen an accident where you don't try to prove it. Then after judgment is rendered and you go to sue the people in New York, or wherever they are amenable to suit, it seems to me you would have to try all those issues all over again—the very same thing, the cause of the explosions, whose fault it was, and who owes the money." (Id. at 19–20.)

By an order dated July 9, 1964, Judge West denied the motion for an injunction *pendente lite*. Furthermore, by an order dated September 16, 1964, Judge West stayed the Louisiana suit pending the determination of the within motions.

While, as is obvious, Judge West's statements are not binding on the parties herein, nor are they binding on the Court, they are persuasive insofar as relevant to the exercise of the Court's discretion. For his observations as to the litigation of identical issues, convenience of the parties, amenability to service, are the self-same factors presented by an appeal to the Court's discretion.

Because of the interrelation between the issues on the question of release and the alternative theory of continued existence of rights against these defendants, I do not believe that a declaratory judgment action brought against the insured seeking to declare the rights and liabilities of plaintiff, which of necessity depend on the existence or non-existence of rights of the defendant insured vis-a-vis third party tortfeasors, is premature as to these third parties. The occurrences are the same, the fact questions are the same, and, in the action between the insurer and insured, the issue of the liability of these third parties must be litigated by virtue of the manner in which the action arose and in which the pleading is framed. They are interested in the issues presented and should be bound by the resolution of those issues. Any prejudice which will or may develop can be resolved by a timely and appropriate motion either under Rule 20(b) or Rule 42(b) of the Federal Rules of Civil Procedure. These matters cannot be decided on a motion of this type, nor can the assertions of the insurance defendants with respect to the coverage of their respective policies.

With respect to the issue of ripeness for adjudication, Professor Borchard has stated:

"When are the facts sufficiently developed to admit to a conclusive adjudication and when are they so contingent and uncertain as to justify a refusal to decide? Again no *a priori* answer is possible.

\* \* \* \* \*

"When are the facts contingent? That is not always easy to determine." Borchard, Declaratory Judgments, supra, at 56, 57.

Plaintiff is presently being sued on the insurance policy it issued to Borden. Every count in the present complaint asserted against the subrogation defendants is intertwined with the defense pleaded to the respective Borden claim. Because of this interrelation of defenses which are immediate and which should not be decided *sans* these defendants, with subrogation rights against these self-same parties arising from the same occurrences, the same facts, and proof, I am of the opinion that the spirit behind the Declaratory Judgment Act would best be served by exercising my discretion in favor of this omnibus action.

An adjudication will clearly serve a useful purpose. Borchard, supra, at 29. The positions of the respective parties are adverse and the defendants have a very strong interest in opposing plaintiff's contentions. (Ibid.) The "issue of questioned status [of Borden vis-a-vis these defendants and necessarily of plaintiff vis-a-vis Borden and these defendants] on which a whole complex of rights may depend [can by the omnibus suit] \* \* \* be expeditiously determined." Id. at 284. Furthermore, it will "enable interdependent rights involving numerous parties to be settled in a single proceeding." Ibid. Plaintiff needs an immediate adjudication of the status of Borden's rights vis-a-vis these defendants, which necessarily involves a determination of what those rights are, which, of course, involves the factual basis of the occurrences upon which these rights are based.

In view of the particular circumstances presented herein, I am of the opinion that, accepting the allegations on the face of the complaint as being true, the Court has jurisdiction over the subject matter and should exercise it to dispose of the whole controversy in this one action and grant complete relief to all parties involved. Thus the complaint does state a claim upon which relief can be granted.

In view of the Court's decision herein, it is unnecessary to pass on plaintiff's assertions with respect to the running of the statute of limitations against those allegedly ultimately liable.

Accordingly, defendants' motions on the grounds set forth are in all respects denied.

Furthermore, defendant Borden's motion for discretionary relief, to wit, dismissal or stay of the two-party action pending in New York brought by Lumbermens against Borden or a change of venue to the United States District Court for the Eastern District of Louisiana, is clearly untenable in view of the decision with respect to the other defendants. All rights and liabilities can more properly be determined in this action than in the action presently pending in Louisiana. That action is a two-party action wherein the relief would not be as complete, nor would the controversy be put completely at rest, as effectively as in the New York action. It would appear that Judge West is in accord with this view. In an affidavit filed by plaintiff's counsel, and uncontradicted by Borden, it would appear that Judge West has observed that the entire action is more properly before this Court. A change of venue to Louisiana would not be effective as to those defendants who are not amenable to suit in Louisiana (see Hoffman v. Blaski, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960)) and this factor is one which should weigh heavily with the Court in exercising its discretion to permit the declaratory judgment

action to be maintained in New York. Cf., Allied Petro-Prod., Inc. v. Maryland Cas. Co., 201 F.Supp. 694 (E.D.Pa.1961).

In view of these factors, and taking into account all the considerations heretofore discussed, Borden's motion is in all respects denied.

The Court will entertain an appropriate motion for a consolidation of the two-party action with the nine-party action if counsel are so advised.

Settle order on notice.