**NATIONAL RAILROAD PASSENGER CORPORATION, Plaintiff,**

v.

**CONSOLIDATED RAIL CORPORATION, Defendant.**

**Civ. A. No. 87–0277–OG.**

United States District Court, District of Columbia.

Aug. 3, 1987.

John C. Morland and Harold Henderson, Washington, D.C., for plaintiff Amtrak.

Lawrence Shiekman and Gerald Norton, Washington, D.C., for defendant Conrail.

## MEMORANDUM

GASCH, District Judge.

## I. INTRODUCTION

On January 4, 1987, a northbound freight train controlled by an engineer and a brakeman and owned by the Consolidated Rail Corporation ("Conrail"), failed to heed a series of slow and stop signals at a track juncture near Chase, Maryland.[1] Consequently the Conrail train entered the path of a high speed northbound passenger train operated by the National Railroad Passenger Corporation ("Amtrak"). A collision ensued, resulting in sixteen deaths, several hundred injuries, and millions of dollars in property damage. Since the accident, at least 38 lawsuits have been filed naming Amtrak, Conrail or both as defendants. Sixteen lawsuits filed against both railroads allege negligence, gross negligence, or wanton and reckless misconduct. Twelve lawsuits seek punitive damages totalling $500 million.[2]

Conrail and Amtrak are parties to a contract which arguably bears upon liability

---

1. At the track juncture, four parallel tracks converge into two tracks which cross the Gunpowder River.

2. As exhibits to its motion for summary judgment, Amtrak attaches investigations of the National Transportation Safety Board, hearings conducted by the United States Senate, and evidence of a criminal indictment for manslaughter brought by the State of Maryland against the Conrail engineer allegedly responsible for the tragedy of January 4, 1987. All of these attachments speak to the issue of Conrail's gross negligence. This Court previously denied Conrail the right to engage in discovery on these matters on the ground that Amtrak's motion for summary judgment posed a question for which such discovery would be wasteful. Accordingly, since the Court finds it unnecessary to conduct fact-finding on the ultimate issue of whether Conrail's conduct was, in fact, grossly negligent, the Court will not consider any of Amtrak's evidence directed toward this issue. The Court agrees with Amtrak's earlier representation that

"[T]he 'facts' set out in our papers need establish only that (1) an accident occurred, (2) property damage and personal injuries resulted, (3) lawsuits have been brought in which allegations of grossly negligent, wanton, will-

apportionment for the aforementioned accident. In the Second Amended and Restated Northeast Corridor Freight Operating Agreement ("Freight Operating Agreement" or "Agreement") of October 1, 1986, Amtrak agreed, *inter alia,* to indemnify Conrail for injuries to Amtrak passengers. Section 5.6 of the Agreement states as follows:

> Amtrak agrees to indemnify and save harmless Conrail and Conrail Employees, irrespective of any negligence or fault of Conrail or Conrail Employees, or howsoever the same shall occur or be caused, from any and all liability for injuries to or death of any Amtrak Passenger and for loss of, damage to, or destruction of any property of any such passenger.

Moreover, the Agreement provides that the indemnifying party shall defend all such suits. *See* Freight Operating Agreement § 5.16. On the basis of these provisions,

Conrail has demanded that Amtrak defend and indemnify it for any claims and damages arising out of the accident at Chase, Maryland. Despite the obvious breadth of the Agreement's indemnification provision, Amtrak claims that it is not obligated to reimburse Conrail for all damages. Amtrak maintains that it need not indemnify Conrail for conduct determined to be reckless, wanton, willful, or grossly negligent. Amtrak contends that an indemnification agreement embracing such conduct is unenforceable as against public policy. Similarly, Amtrak argues that there can be no indemnification for punitive damages. Amtrak seeks a declaratory judgment to this effect. *See* 28 U.S.C. § 2201.[3]

## II. SCOPE OF THE DECLARATORY JUDGMENT ACT

■ The provision of the Freight Operating Agreement at issue in this case is an

---

ful, or reckless conduct have been made, and (4) Conrail will attempt to avoid payment for any awards involving such conduct and punitive damages."
Amtrak's Oppos. to Conrail's Motion for Continuance at 8.

**3.** In a previous lawsuit, based upon the same facts and circumstances, Conrail argued that the Freight Operating Agreement required the Court to submit this case to arbitration. *See Consolidated R. Corp. v. National R.R. Passenger Corp.,* 657 F.Supp. 405, 406 (D.D.C.1987). The Court rejected Conrail's argument, and the case is now on appeal to the United States Court of Appeals for the District of Columbia Circuit. *See Consolidated R. Corp. v. National R.R. Passenger Corp., appeal docketed,* No. 87–7071 (D.C.Cir. April 6, 1987). Conrail did not move the Court to amend the judgment in that case. *See* Fed.R. Civ.P. 59(e).

Nevertheless, Conrail presses the Court now to "reconsider its prior decision and stay this action pending arbitration." *See* Conrail's Oppos. to Amtrak's Motion for Summary Judgment at 4–6, 13. Given the pending appeal and Conrail's failure to present this argument in accordance with the provisions of the Federal Rules of Civil Procedure, the Court questions the propriety of rendering such a decision. In any case, the Court is not persuaded that its previous decision was in error.

Conrail does, however, make one observation regarding Amtrak's interpretation of the Court's earlier decision which warrants comment. Amtrak's complaint in this case seeks a declaration either that the Freight Operating Agreement, by its terms, precludes indemnification for gross negligence and the payment of punitive dam-

ages or that public policy bars any such indemnification. *See* Complaint ¶¶ 13, 17, 18, 23, 24. Amtrak is apparently under the impression that "the Court's formulation of the issue ... puts aside any issue of whether the parties intended to indemnify against the extraordinary level of misconduct apparent here." Amtrak's Motion for Summary Judgment at 4 n. 2. If this were the case, then the effect of the Court's decision to deny arbitration was merely the severance of the public policy issue. Amtrak's allegedly freestanding contract claim would be susceptible to arbitration now or at a later date. *See Hanes Corp. v. Millard,* 531 F.2d 585, 593 (D.C.Cir. 1976) (pure contract dispute area of arbitrator expertise).

Amtrak misconceives the Court's position. In *Consolidated R. Corp., supra,* 657 F.Supp. at 408, the Court framed the legal issue in this case as follows: "must Amtrak indemnify Conrail for any damages arising out of the Chase, Maryland disaster founded upon reckless, wanton, willful, or grossly negligent acts by Conrail or resulting in a punitive damages award." The Court noted that these issues "are neither strictly factual nor legal issues; they are largely questions of public policy." *Id.* As such, the Court held that "the merits of this case are inextricably linked to policy determinations ... [for which] arbitration is an improper mechanism...." *Id.* Whether or not public policy will void the indemnification provision entered into by the parties in this case well may depend, *inter alia,* upon the intentions of the railroads. *See, infra,* at 432. The issues are not separate as the Court made clear in its arbitration decision. Thus, upon resolution of this case, there will exist no separate contract dispute.

indemnity clause.[4] Accordingly, Amtrak's legal obligation under the clause does not arise unless and until Conrail is found at least to have negligently caused the Chase, Maryland collision and liability attaches to such a finding. Amtrak does not here dispute that if Conrail is found merely to be negligent that the indemnity clause will be triggered and will be fully enforceable. Amtrak only disputes its obligation to indemnify Conrail if a trier of fact concludes that Conrail is liable to passengers for wanton, willful, reckless or grossly negligent conduct of its employees or in the event that Conrail is subject to an award of punitive damages in favor of a passenger. Complaint at ¶¶ 9, 15–26. It is undisputed that no such finding has yet been made. The defendant maintains that the scope of the Declaratory Judgment Act is not so broad as to allow the Court to address questions founded on an event which may never occur. For reasons hereafter provided, the Court disagrees and finds that declaratory judgment relief is proper in this case.

The Declaratory Judgment Act ("the Act") provides, in pertinent part, that

[i]n a case of actual controversy within its jurisdiction ... any Court in the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration....

28 U.S.C. § 2201(a). *Cf.* Fed.R.Civ.P. 57. This statute was enacted, at least in part, to "enable[ ] litigants to narrow the issue, speed the decision, and settle the controversy before an accumulation of differences and hostility [ ] engendered a wide and general conflict, involving numerous collateral issues." S.Rep. No. 1005, 73d Cong., 2d Sess. 3 (1934) ("Senate Report"). To facilitate these ends, courts have repeatedly stated that the Act should have a liberal interpretation. *See, e.g., Simmonds Aerocessories, Ltd. v. Elastic Siop Nut Corp.*

*of Am.,* 257 F.2d 485, 489 (3d Cir.1958); *M. Swift & Sons, Inc. v. Lemon,* 24 F.R.D. 43, 46 (S.D.N.Y.1959). Nevertheless, a federal court's power to issue a declaratory judgment is not unlimited. The Act is expressly applied only to cases of "actual controversy." This limitation is not unique; it merely incorporates Article III's requirement that federal courts may only entertain "cases or controversies." *See Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–40, 57 S.Ct. 461, 463–64, 81 L.Ed. 617, *reh'g denied,* 300 U.S. 687, 57 S.Ct. 667, 81 L.Ed. 889 (1937).

In determining whether a declaratory judgment is a proper way of proceeding, the first question presented is whether Amtrak's complaint states a constitutional controversy. *Id.* The Supreme Court has observed that,

a justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; [or] from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Id.* at 240–41, 57 S.Ct. at 463–64 (citations omitted). This statement makes clear that courts should not be "umpire[s] to debates concerning harmless, empty shadows." *Poe v. Ullman,* 367 U.S. 497, 508, 81 S.Ct. 1752, 1758, 6 L.Ed.2d 989, *reh'g denied,* 368 U.S. 869, 82 S.Ct. 21, 7 L.Ed.2d 69 (1961). However, the Supreme Court has recognized that it is not possible to fashion a "precise test" to determine the adequacy of a particular controversy. *See Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941). Thus, "the propriety of

---

4. As noted earlier, the Freight Operating Agreement also addresses the question of which party shall bear the cost of defending any lawsuits brought against Conrail or Amtrak. *See* Freight Operating Agreement § 5.16. Pursuant to the Agreement, "the indemnifying party shall, at its

sole cost and expense, defend such suit...." *Id.* Thus, the Court's determination of whether Amtrak is responsible to indemnify Conrail pursuant to the Agreement will likewise determine whether Amtrak must bear the cost of defending those suits pending against Conrail.

declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." *Public Service Comm'n of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 243, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952). To aid courts in this endeavor, the Supreme Court has set out a somewhat more workable test:

> [t]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Maryland Casualty Co., supra*, 312 U.S. at 273, 61 S.Ct. at 512. Reliance on this test, and the more general concerns articulated above, insures that

> [w]here there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages.

*Haworth, supra*, 300 U.S. at 241, 57 S.Ct. at 464.

Applied to the facts of this case, these standards can yield only the conclusion that Amtrak's complaint states a proper controversy. First, Amtrak's suit does not confront the Court with a hypothetical set of facts. Injured passengers have filed suit against Conrail based on theories of gross negligence and including claims for punitive damages. Conrail has demanded that Amtrak indemnify it as to those claims. Amtrak has refused, alleging that public policy precludes indemnification for such claims. The pending lawsuits naming Conrail as a defendant are not hypothetical. In each of these cases, there is some likelihood that Conrail will be found grossly

negligent or that punitive damages will be awarded. Accordingly, there is a "real and substantial" possibility that Amtrak will be called upon to indemnify Conrail for such claims. *E.g., Keene Corp. v. Insurance Co. of N. America*, 667 F.2d 1034, 1040 (D.C.Cir.1981), *cert. denied*, 455 U.S. 1007, 102 S.Ct. 1644, 71 L.Ed.2d 875, *reh'g denied*, 456 U.S. 951, 102 S.Ct. 2023, 72 L.Ed. 2d 476 (1982).[5]

Moreover, it cannot be said that Amtrak seeks an advisory opinion. The Supreme Court holds that an opinion is advisory when it seeks,

> advance expressions of legal judgment upon issues which remain unfocused because they are not pressed before the Court with that clear concreteness provided when a question emerges precisely framed and necessary for decision from a clash of adversary argument exploring every aspect of a multibased situation embracing conflicting and demanding interests....

*United States v. Fruehauf*, 365 U.S. 146, 157, 81 S.Ct. 547, 554, 5 L.Ed.2d 476, *reh'g denied*, 365 U.S. 875, 81 S.Ct. 899, 5 L.Ed. 2d 864 (1961). In the case at bar, Amtrak poses a question of public policy. Further discovery of facts relating to the accident at Chase, Maryland is not necessary to frame this issue. *See supra*, note 2. In support of their positions, the parties already have submitted briefs and exhibits in excess of 500 pages.[6] It would strain credulity to hold that the litigants in this case are not engaged in the actual antagonistic assertion of rights which safeguards the integrity of the judicial process.

■ Finally, this Court is in a position to issue a conclusive decree which admits of specific relief. If the Court finds that public policy prohibits Amtrak from indemnifying Conrail for gross negligence or awards of punitive damages, then Amtrak will be released from its present state of peril. If, on the other hand, the Court finds that public policy concerns do not outweigh the

---

5. The reality of these claims is demonstrated by the fact that a default by Conrail would trigger Amtrak's duty to indemnify for gross negligence and punitive damages.

6. Illustratively, Conrail was unable to keep its Opposition to Amtrak's Motion for Summary Judgment within the allowable page limitation imposed by this jurisdiction's local rules.

express language of the Agreement, then Amtrak's obligations to defend and indemnify Conrail will be clear and the defendant will have to plan accordingly. In either case, the obligations of both parties toward the pending lawsuits will be determined. Thus, the Court finds that this case does present a constitutional controversy.[7]

The Court's conclusion is borne out by the relevant case law explicating the Declaratory Judgment Act. Pursuant to the Freight Operating Agreement, Amtrak has contracted both to defend and to indemnify Conrail. *See* Freight Operating Agreement § 5.16. As such, Amtrak's posture is analogous to that of an insurer. Cases involving insurance claims are therefore of particular relevance. The use of declaratory judgments is widely accepted in the insurance field. *See Halkin v. Helms*, 690 F.2d 977, 1007 (D.C.Cir.1982); *Keene Corp., supra*, 667 F.2d at 1040 n. 8. Where insurers owe a duty to defend, the duty ripens upon the filing of a lawsuit against an insured. Since judicial declarations of nonliability are commonplace in the insurance millieu, *see, e.g., Haworth, supra*, 300 U.S. at 244, 57 S.Ct. at 465, insurers often seek a declaratory judgment prior to the institution of suit that they are relieved of their duty to defend. Courts have found sufficient "immediacy and reality" in this situation to warrant the issuance of a declaratory judgment. *See Maryland Casualty Co., supra*, 312 U.S. at 273–74, 61 S.Ct. at 512–13.

The Supreme Court has also demonstrated a willingness to find a proper controversy in a life insurance context where an insurer obligates itself to pay its insured upon the occurrence of some life-terminating event. In such cases, disputes arise where the bargained for event occurs, the insurer concludes that no payment is necessary, yet the estate of the insured has made no demand for benefits. Although the insurer's duty to pay is ordinarily contingent upon the insured's request for payment, the Supreme Court has found that notwithstanding the absence of a demand for payment, the peril of an insurer is of sufficient "immediacy and reality" to permit a finding of a justiciable controversy. *See Haworth, supra*, 300 U.S. at 244, 57 S.Ct. at 465.

Conrail maintains that Amtrak's duty to indemnify is distinguishable from these cases because it is contingent upon a trier of fact determining either that Conrail was grossly negligent or that an award of punitive damages against Conrail is appropriate —events which may never occur. Conrail argues that a declaratory judgment in such a circumstance should not be allowed.

█ The Supreme Court recognizes that "the difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree...." *Maryland Casualty Co., supra*, 312 U.S. at 273, 61 S.Ct. at 512. There is no doubt that the existence of a contingency will, in many cases, be indicative of the fact that no justiciable controversy exists. However, given the many variables which enter into a court's

---

7. This case is in federal court on the basis of the diversity statute. 28 U.S.C. § 1332. As such, the Court is bound to apply state substantive law. *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). In this case, the parties agree that the applicable law is that of the District of Columbia. *See* Freight Operating Agreement § 4.6. Conrail argues that the Court should decline jurisdiction of Amtrak's declaratory judgment complaint because the District of Columbia Court of Appeals has ruled that it would be inappropriate for the courts of the District of Columbia to issue a declaratory judgment deciding whether indemnification for punitive damages would be contrary to the public policy of the District of Columbia where the facts concerning the basis for such liability were not yet proven and the answer to the question could turn on such facts. *See Salus Corp. v. Continental Casualty Co.*, 478 A.2d 1067, 1071 (D.C.1984). However, the Declaratory Judgment Act is procedural. *See Haworth, supra*, 300 U.S. at 240, 57 S.Ct. at 463–64. As such, federal law determines whether a federal court may properly render a declaratory judgment. State substantive law addressing this subject is simply inapposite. *See Farmers Alliance Mutual Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir.), *cert. denied*, 439 U.S. 826, 99 S.Ct. 97, 58 L.Ed.2d 119 (1978); *Lemon, supra*, 24 F.R.D. at 45. *See also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 674, 70 S.Ct. 876, 880, 94 L.Ed. 1194 (1950) (in dicta). *See generally* 6A J. Moore, J. Lucas & G. Grotheer, Jr., Moore's Federal Practice ¶ 57.02 (2d ed. 1986).

determination of whether a constitutional controversy is present, the existence of a contingency does not *per se* require a court to find that the issuance of a declaratory judgment would be improper. Thus, the Eleventh Circuit held that,

> '[t]here is little difficulty in finding an actual controversy if all the acts that are alleged to create liability already have occurred.... The problem is when a declaration is sought on the legal consequences of some act that may or may not occur. It is clear that in some instances a declaratory judgment is proper even though there are future contingencies that will determine whether a controversy ever actually becomes real.'

*Browning-Ferris Indus. of Alabama, Inc. v. Alabama Dep't of Envtl. Management,* 799 F.2d 1473, 1478 (11th Cir.1986) (quoting C. Wright, A. Miller & M. Kane, 10A Federal Practice and Procedure: Civil 2d § 2757 at 585–86).[8] This is not to say that courts should reach out to decide issues that will likely never come to pass. In determining whether a dispute hinged on a contingency is justiciable, courts should focus on "the practical likelihood that the contingencies will occur and that the controversy is a real one...." *Browning-Ferris, supra,* 799 F.2d at 1478. Numerous other decisions support this conclusion. *See, e.g., ACandS, Inc. v. Aetna Casualty and Surety Co.,* 666 F.2d 819, 822 (3d Cir.1981); *American Casualty Co. of Reading, Pa. v. Howard,* 173 F.2d 924, 929 (4th Cir.1949); *American Machine & Metals, Inc. v. De Bothezat Impeller Co.,* 166 F.2d 535, 536

(2d Cir.1948); *Lumbermens Mut. Casualty Co. v. Borden Co.,* 241 F.Supp. 683, 701 (S.D.N.Y.1965); *Maryland Casualty Co. v. Hubbard,* 22 F.Supp. 697, 700 (S.D.Ca. 1938).[9]

In keeping with this rule, recent decisions have placed little weight on the fact that contingencies may exist. Thus, in *ACandS, supra,* 666 F.2d at 819, an asbestos manufacturer was permitted to secure a declaratory judgment delimiting which of its insurers had an obligation to indemnify it in the event that a judgment should be awarded in favor of a third party claimant against the manufacturer. The *ACandS* Court was impressed by the fact that plaintiff was placed in peril by its uncertainty about the meaning of a contract. The legislative history of the Declaratory Judgment Act indicates that one of Congress' purposes for creating the act was to enable parties in a dispute over contract rights to secure a declaration about such rights before any breach of the contract. *See* Senate Report at 2–3. The *ACandS* plaintiff was placed in a situation whereby its insurers refused to defend or indemnify it. Without a declaration of its rights, the plaintiff would be required to defend itself and to pay any judgment rendered against it. The Court thus held that,

> [t]he dispute between Aetna, Travelers and ACandS as to the coverage of the insurance policies is real and concrete. The factors that will determine the relative duties and benefits under the insurance contracts are independent of the underlying claims and are being present-

---

8. Similarly, in *Keene Corp., supra,* 667 F.2d 1034, the Court of Appeals in this jurisdiction held that an asbestos manufacturer stated a proper controversy when it sued for a declaratory judgment to resolve the respective liabilities of the insurers it had relied upon during the previous 20 years. The Court was unpersuaded by the fact that the insurance coverage issues were not raised in the context of individual cases. *Id.* at 1039. Significantly, the declaratory judgment rendered focused on establishing a general set of legal rules for determining coverage; the Court held that the specific liability of each carrier would be based upon the application of these rules to the factual circumstances of each individual case. *Id.* at 1040–41, 1051–52.

9. An excellent discussion about declaratory judgments in circumstances where there are contingencies present is provided by *Borden Co., supra,* 241 F.Supp. 683. Although decided more than 20 years before *Browning-Ferris,* the Court similarly concluded that,

> there exist contingent rights which can form the basis of a declaratory judgment. Whether the controversy between the parties, based on these rights, is of sufficient immediacy to warrant a present declaration of these rights is an issue, as noted above, going to the court's discretion rather than to its jurisdiction, and a determination of necessity rests upon the particular circumstances presented by each individual case.

*Id.* at 701.

ed in an adversarial context by parties with adverse interests. Declaratory suits to determine the scope of insurance coverage have often been brought independently of the underlying claims albeit the exact sums to which the insurer may be liable to indemnify depend on the outcome of the underlying suits.

*Id.* at 822–23 (citations omitted). *See also Keene Corp., supra,* 667 F.2d at 1034 (permitting asbestos manufacturer to sue for declaratory judgment to determine the respective liability of its numerous insurers in case of judgments favoring third party claimants). This case resembles *ACandS;* Amtrak is presently in a state of peril over its obligations under the Freight Operating Agreement and until its rights are defined, it must defend itself and pay all judgments rendered against it. Consequently, this Court likewise holds that the contingencies associated with Amtrak's obligation to indemnify Conrail should not prevent the Court from finding a constitutional controversy.

 The Court's conclusion that the controversy in this case is real does not, without more, suffice to ensure that the issue presented is justiciable. The Declaratory Judgment Act provides that a court "may" declare the rights of an interested party. *See* 28 U.S.C. § 2201. Thus, it is settled that the issuance of a declaratory judgment turns, in part, on the discretion of the Court. *See A.L. Mechling Barge Lines, Inc. v. United States,* 368 U.S. 324, 331, 82 S.Ct. 337, 342, 7 L.Ed.2d 317 (1961). The Court finds that the factors influencing this decision weigh overwhelmingly in favor of granting a declaratory judgment.

Two criteria are ordinarily relied upon to determine whether a court should, in its discretion, render a declaratory judgment: (1) whether the judgment will "serve a useful purpose in clarifying the legal relations in issue" or (2) whether the judgment will "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *See President v. Vance,* 627 F.2d 353, 364 n. 76 (D.C.Cir.1980) (quoting E. Borchard, Declaratory Judgments 299 (2d ed. 1941). Be-

cause plaintiff's complaint raises an issue of public policy, a declaration by this Court would settle the legal relations of the parties. At present, Amtrak and Conrail have been sued jointly in many of the pending lawsuits. If Amtrak is not required to indemnify Conrail for gross negligence or for punitive damage awards, then it is likely that Conrail will take the lead in the litigation. On the other hand, if Amtrak must indemnify Conrail for negligence, gross negligence, and punitive damages, then Amtrak must also fulfill its obligation to defend Conrail.

Moreover, the reality of the modern day claims adjustment process is that an insurer's indemnification agreement carries with it the responsibility to initiate the settlement of claims. For this reason, the *ACandS* court held that

[i]t would turn the reality of the claims adjustment process on its head to hinge justiciability of an insurance agreement on the maturation of a suit to a judgment when the overwhelming number of disputes are resolved by settlement. The respective interests and obligations of insured and insurers, when disputed, require determination much in advance of judgment since they will designate the bearer of ultimate liability in the underlying cases and hence the bearer of the onus and risks of settlement. So viewed, the controversy is quite proper for a judicial determination now. To delay for the sake of more concrete development would prevent the litigants from shaping a settlement strategy and thereby avoiding unnecessary costs. But declaratory judgment relief was intended to avoid precisely the "accrual of avoidable damages to one not certain of his rights."

*ACandS, Inc., supra,* 666 F.2d at 823. *See, e.g., American Casualty Co. of Reading, Pa., supra,* 173 F.2d at 928. In light of these factors, it is apparent that a declaratory judgment will serve a particularly beneficial purpose in this case since there is little question that the passengers aboard Amtrak's train are entitled to recover for their injuries and the railroads have a great interest in settling as many cases as possible.

■ Finally, as stated previously, a declaratory judgment will serve the salutary purpose of affording Amtrak relief from the peril under which it is now operating. A ruling by the Court as to Amtrak's obligation to indemnify Conrail pursuant to the Freight Operating Agreement will either confirm Amtrak's responsibility to pay for gross negligence and for punitive damages or will release the railroad from any such responsibility. In either case, Amtrak will be assured of its legal position and will be relieved from the uncertainty under which it presently labors. Accordingly, the Court finds that Amtrak has stated an actual controversy which is justiciable and therefore the Court will issue a declaratory judgment.[10]

## III. AMTRAK'S MOTION FOR SUMMARY JUDGMENT

In its motion for summary judgment, Amtrak contends that regardless of the intentions of the parties in drafting the liability provision of the Freight Operating Agreement, public policy demands that the Court void the indemnification agreement at issue. In determining whether to decide this issue on summary judgment, the Court must rely on the law of the District of Columbia. *See* Freight Operating Agree-

ment § 4.6. In the District it is settled that contractual provisions may be invalidated when they are contrary to public policy. *See Wisconsin Avenue Assoc., Inc. v. 2720 Wisconsin Ave. Cooperative Ass'n, Inc.,* 441 A.2d 956, 964 (D.C.), *cert. denied,* 459 U.S. 827, 103 S.Ct. 62, 74 L.Ed.2d 64 (1982). Nevertheless, the parties agree that there are no District of Columbia cases which specifically address the question of whether public policy should void a contract which permits indemnification for gross negligence or wanton and wilful conduct. *See* Amtrak's Motion for Summary Judgment at 21 n. 43; Conrail's Opposition at 6–7.

■ Contrary to Amtrak's position, the Court holds that resolution of this public policy question depends, at least in part, upon the intention of the parties who drafted the indemnification agreement. Although no District of Columbia precedent directly addresses this issue, in *Burtoff v. Burtoff,* 418 A.2d 1085 (D.C.1980), the District of Columbia Court of Appeals considered whether an antenuptial contract, setting spouse's rights to support upon dissolution of the marriage, was violative of public policy. In considering this question, the Court weighed the policies disfavoring

**10.** Conrail correctly points out that in earlier cases, this Circuit has identified certain other factors as relevant to a court's prudential inquiry. *See Hanes Corp., supra,* 531 F.2d at 591 n. 4. Yet, none of these factors weigh in favor or denying Amtrak the right to a declaratory judgment. Conrail primarily argues that the Court should abstain from hearing this case because a decision here will require the Court to render a judgment about unsettled questions of state or local law. *See Skelly Oil Co., supra,* 339 U.S. at 673, 70 S.Ct. at 880. Abstention from the exercise of federal jurisdiction is, however, "the exception, not the rule," and abdication of the obligation to rule upon a case can be justified only in "exceptional circumstances." *See Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483, *reh'g denied,* 426 U.S. 912, 96 S.Ct. 2239, 48 L.Ed.2d 839 (1976). The fact that determining the applicable state law may be a difficult task is not a proper ground upon which abstention may be based. *See McNeese v. Board of Education,* 373 U.S. 668, 673 n. 5, 83 S.Ct. 1433, 1436 n. 5, 10 L.Ed.2d 622 (1963); *Louisiana Power & Light Co. v. Thibodaux,* 360 U.S. 25, 27, 79 S.Ct. 1070, 1072, 3 L.Ed.2d 1058, *reh'g*

*denied,* 360 U.S. 940, 79 S.Ct. 1442, 3 L.Ed.2d 1552 (1959).

Conrail further argues that Amtrak seeks an anticipatory adjudication of the validity of a defense against a claim it expects to be pressed upon it and that this is an improper use of the declaratory judgment procedure. *See Hanes Corp., supra,* 531 F.2d at 592–93 & n.5. In fact, courts have disallowed declaratory judgment when the purpose of the suit is to deprive a plaintiff of his choice of forum. For example, in *Hanes,* the Court noted that a plaintiff in a declaratory judgment action, who was the defendant in a series of personal injury actions arising out of the same set of facts, should not be permitted to litigate the central negligence issue on declaratory judgment in a forum of its choice. This case, however, will not deprive the injured rail passengers from adjudicating the negligence of Amtrak and Conrail in forums of their choosing. Rather, it will determine, as between the two railroads, which is the party responsible for paying claims based on gross negligence and punitive damages. As such, there is no perversion of the declaratory judgment procedure.

antenuptial agreements against the fairness of the contract and the circumstances, including intent, which surrounded its drafting. *Id.* at 1088–90. Moreover, where there is no statutory guidance and the common law is undeveloped, District of Columbia courts find the decisions of Maryland courts to be "especially persuasive." *See Napoleon v. Heard,* 455 A.2d 901, 903 (D.C.1983). In fact, by statute the District of Columbia has incorporated the common law of Maryland. *See* D.C.Code Ann. § 49–301; *Duvallon v. District of Columbia,* 515 A.2d 724, 726 (D.C.1986). It is therefore significant that Maryland courts likewise balance the persuasiveness of a public policy against the intentions of the parties to a contract. In *Maryland National Capital Park and Planning Comm'n v. Washington National Arena,* 282 Md. 588, 386 A.2d 1216 (1978), the Court of Appeals of Maryland wrote,

> [e]nforcement [of a contract] will be denied only where the factors that argue against implementing the particular provision clearly and unequivocally outweigh 'the law's traditional interest in protecting the expectations of the parties, its abhorrence of any unjust enrichment, and any public interest in the enforcement' of the contested term.

*Id.* at 1229 (quoting Restatement (Second) of Contracts § 320, comment b (Tent. Draft No. 12, 1977).[11] In deciding whether public policy should void the indemnification provision in the Freight Operating Agreement, the Court is thus persuaded that it must consider the intentions of the parties in addition to the public policies that favor invalidation of the provision.

On the basis of this conclusion, the Court must deny Amtrak's motion for summary judgment. Federal Rule of Civil Procedure 56 sets out the standard of review which the Court must apply in evaluating a motion for summary judgment. The rule provides, in pertinent part,

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). Thus, summary judgment will only be appropriate when there is no genuine issue of material fact. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 153, 90 S.Ct. 1598, 1606, 26 L.Ed.2d 142 (1970). To prevail, the moving party must demonstrate the absence of any such fact, *see Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), and the party opposing the motion must not raise any in rebuttal. *See Greenberg v. Food & Drug Admin.,* 803 F.2d 1213, 1216 (D.C.Cir.1986). Further, so that no person is deprived of his or her day in court, "the inferences to be drawn from the underlying facts contained in such materials [affidavits, depositions, and exhibits] must be viewed in the light most favorable to the party opposing the motion." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). Accordingly, a court should not grant summary judgment where it believes the better course is to order a hearing or proceed to trial. *Id.* Summary judgment should only be granted in clear cases.

In the instant case, the plaintiff has not met its burden of demonstrating that there is no genuine issue of material fact. *See Adickes, supra,* 398 U.S. at 153, 90 S.Ct. at 1606. The intent of the parties to the Freight Operating Agreement is by no means clear. The president of Amtrak has submitted an affidavit in which he states, "I do not believe that the indemnification provisions in the Freight Operating Agreement was or could have been intended to cover wilful, wanton, reckless or grossly negligent conduct or punitive damages." *See* Declaration of W. Graham Claytor, Jr. at ¶ 2. To the contrary, General Counsel-Litigation of Conrail has submitted an affidavit in which he states that, "Conrail would not have agreed to the indemnity

---

11. This section of the Restatement has been re-codified. *See* Restatement (Second) of Contracts § 178 (1981).

provisions [of the Freight Operating Agreement] if Conrail was aware that Amtrak intended that the provisions were limited to simple negligence or did not cover claims for punitive damages." *See* Supplemental Declaration of Donald A. Brinkworth at ¶ 7. On the basis of, *inter alia*, these conflicting affidavits, even the plaintiff acknowledges that the issue of intent is squarely in controversy. *See* Plaintiff's Memorandum Regarding Intent of the Parties at 8.

The District of Columbia Court of Appeals has held that, "as a general proposition, summary judgment is likely to be inappropriate when issues of motive or intent are material...." *Glekas v. Boss & Phelps, Inc.*, 437 A.2d 584, 587 (D.C.1981); *see also Davis v. Chevy Chase Financial Ltd.*, 667 F.2d 160, 169 (D.C.Cir.1981) ("where contractual language is susceptible of at least two fairly reasonable interpretations, this presents a triable issue of fact and summary judgment would be improper" (quoting *Aetna Casualty & Surety Co. v. Giesow*, 412 F.2d 468, 471 (2d Cir.1969)). Based on the foregoing, the Court concludes that a genuine issue of material fact is present. Consequently, the Court denies Amtrak's motion for summary judgment and holds that an evidentiary hearing will be conducted to determine intent.

## IV. CONCLUSION

In sum, this is a proper case for a declaratory judgment. However, because The Court concludes that a determination of whether public policy should invalidate the indemnification provision in the Freight Operating Agreement requires consideration of the intentions of the parties who drafted the agreement, this is not a proper case for summary judgment. Accordingly, the Court will schedule a date for an evidentiary hearing on the question of intent.

### ORDER

Upon consideration of plaintiff's motion for summary judgment, the opposition thereto, oral argument and the entire record herein, and for the reasons stated in the accompanying memorandum, it is by the Court this 31st day of July, 1987,

ORDERED that because there is a material fact in dispute, the plaintiff's motion be, and hereby is, denied; it is further

ORDERED that the parties may engage in discovery for a period of forty-five (45) days from the filing of this order; it is further

ORDERED that such discovery shall bear on the question of whether it was the intent of the parties to the Freight Operating Agreement to indemnify Conrail for reckless, wanton, willful, grossly negligent conduct, or punitive damages; it is further

ORDERED that after the expiration of 45 days, the Court will set a date for an evidentiary hearing.