**Julie W. MITCHELL**

v.

**William J. HENDERSON.**

**No. Civ.A. DKC2000–56.**

United States District Court, D. Maryland.

Jan. 23, 2001.

Douglas E. Rosenfeld, Law Office, Derwood, MD, for Plaintiff.

Nadira Clarke, Office of the U.S. Atty., Baltimore, MD, for Defendant.

---

1. Defendant asserts and Plaintiff does not contest that Plaintiff has been awarded injury

*MEMORANDUM OPINION*

CHASANOW, District Judge.

Plaintiff, Julie Mitchell, has filed an action alleging employment discrimination pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, *et seq.* against Defendant, William J. Henderson, Postmaster General of the United States Postal Service ("USPS"). In addition to the Title VII claim, Plaintiff requests a declaratory judgment with respect to USPS's efforts to collect a portion of Plaintiff's settlement monies as reimbursement for previously awarded injury compensation benefits pursuant to the Federal Employees Compensation Act ("FECA"), 5 U.S.C. § 8101 *et seq.* Presently pending before this court is Defendant's motion to dismiss or in the alternative for summary judgment. The issues have been fully briefed, and no hearing is deemed necessary. Local Rule 105.6. For the following reasons, the court shall GRANT Defendant's motion to dismiss as to the Title VII claim and enter a declaration concerning subrogation rights under FECA.

### I. Background

This pending lawsuit arises from a previous action Plaintiff brought against the Postmaster General, and Richard Price, her co-employee, alleging workplace sexual harassment and discrimination. *Mitchell v. Price,* DKC 96–3011. On June 10, 1997, Mitchell signed a settlement agreement dismissing her claims against USPS. However, Mitchell continued her private action against Price. She also expressly reserved her right to pursue FECA benefits [1] from the government. Paper No. 1, Exhibit 1, 3–4.

Once Plaintiff commenced discovery against Mr. Price, USPS, as a non-party to the lawsuit, invoked the Touhy regulations. *See* 39 C.F.R. § 265.12 (2000). The Touhy regulations articulate the procedures for obtaining Postal Service employee testimo-

compensation benefits pursuant to the FECA provisions.

ny or agency records for the purposes of private litigation. *Id.* at § 265.12(c)—(d). Relying on these regulations, USPS took the position that for Mitchell's lawsuit against Price, she would have to pay USPS prescribed amounts for the Postal employees she deposed or requested for trial. *Id.* at § 265.12(g). USPS also warned Plaintiff that the costs assessed against her would be higher for trial proceedings than for deposition testimony. Paper No. 1, Exhibit 4 at 2. Although still disputing that the Touhy regulations applied, Plaintiff's counsel agreed to the reimbursement and USPS subsequently produced the employees to testify. In correspondence dated March 18, 1999, USPS agreed to waive its rights to reimbursement if and only if there was a settlement prior to trial. *See* Paper No. 1, Exhibit 5. On March 30, 1999, plaintiff settled her private case with Mr. Price for the amount of $8,000.00, and thus was not required to reimburse the witness fees.

Prior to Plaintiff's settlement, however, USPS advised Mitchell of the government's subrogation rights under FECA for monies collected from third party liability suits. Paper No. 1, Exhibit 5. Following the settlement proceeding, Plaintiff was advised of this once again. Paper no. 1, Exhibit 7.

On March 31, 1999, Mitchell filed a motion to deny or reduce payment of settlement proceeds to USPS in the original action. This court denied the motion for lack of jurisdiction because USPS was no longer a party to the action. Subsequently on September 10, 1999, Mitchell filed a formal EEO complaint alleging retaliation in violation of Title VII. USPS denied her claim in a final agency decision issued on October 7, 1999. Plaintiff then filed this instant suit. Currently pending before the court is Defendant's motion to dismiss or in the alternative for summary judgment.

Generally, on a Rule 12(b)(6) motion the court considers not only the complaint, but also any exhibits actually attached or referred to as part of the complaint. *Pen-*sion Benefit Guar. Corp. v. White Consolidated Industries, 998 F.2d 1192, 1196 (3rd Cir.1993). Where, on such a motion to dismiss other "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b)(6). "In interpreting the requirements of this rule, the [Fourth Circuit] has held that the term reasonable opportunity requires that all parties be given 'some indication by the court ... that it is treating the 12(b)(6) motion as a motion for summary judgment,' with the consequent right in the opposing party to file counter affidavits or pursue reasonable discovery." *Gay v. Wall,* 761 F.2d 175, 177 (4th Cir. 1985) (quoting *Johnson v. RAC Corp.,* 491 F.2d 510, 513 (4th Cir.1974) (citations omitted)).

 In its motion to dismiss or in the alternative for summary judgment, Defendant has asked the court to consider material outside of the pleadings related to the Title VII claim. Plaintiff objects to this conversion because no discovery has taken place and has supported that opposition with a certificate under Rule 56. Specifically, Plaintiff asks for discovery on issues related only to her Title VII claim. In light of these facts, the court does not convert the motion as to the Title VII claim and instead analyzes it under the more lenient standard of a Rule 12(b)(6) motion to dismiss. However, the court shall analyze the request for declaratory relief under a summary judgment standard as the parties do not dispute any material facts. In addition, the court may take judicial notice of its own records, the case file in DKC 96–3011, without converting to a motion for summary judgment. 5A Wright & Miller, Federal Practice and Procedure § 1364 at 479 (2d ed.1990).

## II. Standard of Review

A motion to dismiss pursuant to Fed. R.Civ.P. 12(b)(6) ought not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). All that the Federal Rules of Civil Procedure require of a complaint is that it contain " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 47, 78 S.Ct. 99; *Comet Enterprises Ltd. v. Air–A–Plane Corp.,* 128 F.3d 855, 860 (4th Cir.1997). In reviewing the complaint, the court accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Ibarra v. United States,* 120 F.3d 472, 473 (4th Cir.1997). The court must disregard the contrary allegations of the opposing party. *A.S. Abell Co. v. Chell,* 412 F.2d 712, 715 (4th Cir.1969). The court need not, however, accept unsupported legal conclusions, *Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir.1989), legal conclusions couched as factual allegations, *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir.1979).

## III. Analysis

### A. Title VII Retaliation Claim

■ "Title VII prohibits an employer from discriminating against an employee in retaliation for that employee's opposition to, or complaint about, an unlawful employment practice." 42 U.S.C. § 2000e–3(a) (2000). "To establish a prima facie case of retaliation", Mitchell "must show that 1)[she] was engaged in a protected activity; 2)[her] employer took adverse employment action against [her]; and 3) a sufficient causal connection existed between [her] protected activity and [her] employer's adverse employment action." *Hopkins v. Baltimore Gas & Electric Co.,* 77 F.3d 745, 754 (4th Cir.1996) (citing to *McNairn v. Sullivan,* 929 F.2d 974, 980 (4th Cir.1991)).

■ Plaintiff alleges that Defendant retaliated against her for filing an EEO complaint by impeding her litigation against Mr. Price. Specifically, Mitchell asserts that USPS invoked the Touhy regulations as retaliation for her pursuit of the initial lawsuit against USPS. Relying on the Touhy regulations, USPS demanded Mitchell identify its employees that she wanted to depose as well as reimburse the organization for their time.

■ Mitchell fails to allege a prima facie case of discrimination because her assertions fall short of the allegation that USPS took an adverse employment action against her. Title VII liability arises from tangible employment actions, which the Court has recently defined to include not only " 'hiring, firing, failing to promote, . . . significant change in benefits, but also reassignment with significantly different responsibilities.' " *Boone v. Goldin,* 178 F.3d 253, 256 (4th Cir.1999) (quoting *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)).

■ However, "Congress did not intend Title VII to provide redress for trivial discomforts endemic to employment." *Id.* The Fourth Circuit has also specified that "there are many interlocutory or mediate decisions having no immediate impact upon employment conditions which were not intended to fall within . . . Title VII." *Page v. Bolger,* 645 F.2d 227, 233 (4th Cir.1981); *see also Munday v. Waste Mgmt. Of N. Am., Inc.,* 126 F.3d 239, 243 (4th Cir.1997), *cert. denied,* 522 U.S. 1116, 118 S.Ct. 1053, 140 L.Ed.2d 116 (1998) ("In no case in this circuit have we found an adverse employment action to encompass a situation where the employer has instruct-

ed employees to ignore and spy on an employee who engaged in a protected activity, without evidence that the terms, conditions, or benefits of [plaintiff's] employment were adversely affected."). Thus, the employment action alleged must be a tangible adverse employment action directly impacting Plaintiff's employment.

In this case, Mitchell alleges that USPS retaliated against her for filing the EEO complaint, a protected activity, by impeding her litigation and refusing to compensate her for the time she spent pursuing her lawsuit against Mr. Price. Plaintiff does not contend that USPS's actions had any effect on her actual employment.[2] Rather, Plaintiff asserts that because USPS compensated the other employees deposed in her lawsuit, she too, as a USPS employee, should have received full pay and benefits for her participation as a witness **and party** in her own litigation. Plaintiff highlights this alleged denial of benefits as an adverse employment action taken by USPS in response to her filing the EEO complaint.[3]

However, the Touhy regulations do not provide that USPS should fund employees bringing private legal actions. Rather, the regulations only apply to Postal Services employees "receiving a demand" for testimony. 39 C.F.R. § 265.12(a). As plaintiff in her own suit, Mitchell was the one sending out the demands. Moreover, the Postal Service originally asked Plaintiff to reimburse it for the costs of deposing its employees. It makes no sense that USPS would pay Mitchell only to turn around and ask for reimbursement.

2. Plaintiff's assertion that the Postal Service arbitrarily invoked the Touhy regulations in this case and not in others is irrelevant because she does not assert that the regulations fundamentally impacted her employment environment. At most, these regulations hindered her ability to litigate her case effectively.

3. Plaintiff's opposition to the motion to dismiss also contains a cryptic sentence: "Similarly, if the Postal Service has lent support to other employees' lawsuits against third party tortfeasors who have injured Postal Service

The complaint totally fails to mention any impact on Plaintiff's employment. Instead, only the impact on her lawsuit is alleged. Mitchell describes USPS's hindering of her ability to litigate her lawsuit effectively but she does not detail any changes in her work life as a postal employee. Plaintiff has failed to allege that USPS took an action in retaliation for her filing of the EEO complaint which adversely affected her employment. Thus, the court shall grant Defendant's motion to dismiss with respect to Plaintiff's Title VII retaliation claim.

## B. Declaratory Judgment

### 1. Jurisdiction

Plaintiff has also asked this court for a declaratory judgment stating that USPS has no right to any of the settlement monies she received from executing an agreement with Price. USPS has indicated that it seeks reimbursement for injury compensation benefits previously paid to Mitchell pursuant to the FECA provisions. Plaintiff asserts that Defendant waived its right to any such monies through the June 10, 1997 settlement agreement and through the invocation of the Touhy regulations.

 Although initially asserting this court lacked jurisdiction to decide this issue, Defendant concedes that this court may have jurisdiction over this claim if the Ninth Circuit is correct. However, Defendant asserts that this court should exercise its discretion and deny Plaintiff's request for declaratory relief and require her to

employees in the performance of their duty, while denying such support to Plaintiff, then Plaintiff has been denied yet another, separate "term, condition or privilege" of employment and, thereby, a cognizable claim of retaliation." Paper no. 10 at 11. The complaint, however, which is at issue makes no such allegation. Furthermore, Plaintiff has not pointed to a single authority suggesting that a protected condition of employment for postal employees is receiving full pay and benefits to pursue private litigation.

seek redress through the administrative process at the Department of Labor.[4]

 The inquiry into USPS's reimbursement for injury compensation benefits from the Federal Employees' Compensation Fund given to Plaintiff pursuant to 5 U.S.C. § 8132 is one properly before this court. The Fourth Circuit has recognized that:

[I]n a declaratory judgment action, the federal right litigated may belong to the declaratory judgment defendant rather than the declaratory judgment plaintiff. Thus, if the declaratory judgment plaintiff is not alleging an affirmative claim arising under federal law against the declaratory judgment defendant, the proper jurisdictional question is whether the complaint alleges a claim arising under federal law that the declaratory judgment defendant could affirmatively bring against the declaratory judgment plaintiff.

*Columbia Gas Transmission Corp. v. Drain,* 237 F.3d 366, 369 (4th Cir.2001). Thus, federal district courts have jurisdiction over declaratory judgment suits in which a defendant could bring a coercive action to enforce its rights and that action necessarily presents a federal question.

Moreover, in *Janakes v. United States Postal Service,* 768 F.2d 1091, 1094 (9th Cir.1985), the Ninth Circuit held that federal question jurisdiction existed for a declaratory relief action by a federal employee against the United States seeking interpretation of § 8132. *Id.* Specifically, the Ninth Circuit reasoned that even though the employee was in essence asserting a federal defense, which typically cannot be used to invoke federal question jurisdiction, the declaratory relief defendant (*i.e.,* the United States) could have brought a coercive action in federal court

to enforce its rights, thereby creating federal question jurisdiction based on § 8132. *Id.* Thus, if the court would have jurisdiction over an action brought by a defendant to collect a portion of a judgment as FECA reimbursement, then by symmetry, this court has jurisdiction over a plaintiff litigating the position that the defendant has lost its right to that same reimbursement. Furthermore, employees routinely bring declaratory judgment actions seeking to avoid reimbursement under § 8132. *See id.; United States v. Lorenzetti,* 467 U.S. 167, 104 S.Ct. 2284, 81 L.Ed.2d 134 (1984); *Ward v. U.S. Dept. of Labor,* 726 F.2d 516 (9th Cir.1984); *Green v. U.S. Dept. of Labor,* 775 F.2d 964 (8th Cir. 1985); *Purser v. U.S. Dept. of Labor,* 943 F.Supp. 898 (M.D.Tenn.1996); *Kachanis v. United States,* 1993 WL 389388 (D.R.I. 1993); *Cattani v. United States,* No. 86 C 7982, 1989 WL 157508 (N.D.Ill. Dec. 12, 1989). Thus, the court will exercise its jurisdiction and analyze this issue.

**2. Standard of Review**

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court must draw all reasonable inferences in the light most favorable to the non-moving party. *Tinsley v. First Union Nat'l Bank,* 155 F.3d 435, 437 (4th Cir.1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof con-

**4.** "Whether to grant a declaratory judgment is a matter within the sound discretion of the district court." *Chaghervand v. CareFirst,* 909 F.Supp. 304, 312–313 (D.Md.1995) (citing to *Aetna Casualty & Surety Co. v. Quarles,* 92 F.2d 321, 324–325 (4th Cir.1937)). "Declaratory Judgment is appropriate where there is

an actual case or controversy between the parties, and the declaration will finally resolve the case or controversy." *Id.* There is no dispute that there is an actual controversy between the parties over USPS's subrogation rights. Moreover, as later discussed, this matter is properly before this court.

cerning an essential element ... necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Thus, on those issues on which the non-moving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505.

### 3. Issuance of a Declaratory Judgment

 In deciding whether to issue a declaratory judgment, the court should ask "(1) whether the judgment 'will serve a useful purpose in clarifying the legal relations in issue, or (2) whether the judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *White v. Natl. Union Fire Ins. Co. of Pittsburgh, PA.*, 913 F.2d 165, 168 (4th Cir.1990) (quoting *National R.R. Passenger Corp. v. Consolidated Rail Corp.*, 670 F.Supp. 424, 431 (D.D.C.1987) (citing *President v. Vance*, 627 F.2d 353, 364 n. 76 (D.C.Cir. 1980), and E. Borchard, Declaratory Judgments 299 (2d ed.1941))). The question at the heart of this dispute is whether Defendant has subrogation rights with respect to Plaintiff's settlement monies. The court's issuance of a declaratory judgment will answer this question by clarifying Defendant's subrogation rights and thus, the dispute will be resolved. Plaintiff has had a full opportunity to present evidence on this issue and there are no material facts in dispute. Inasmuch as Plaintiff fails as a matter of law to establish a waiver of Defendant's subrogation rights, the court is able to declare Plaintiff's rights on the present record.

### 4. Right of Reimbursement

 FECA "provides a comprehensive system of compensation for federal employees who sustain work-related injuries." *Lorenzetti*, 467 U.S. at 168, 104 S.Ct. 2284. "An employee who receives FECA benefits must reimburse the United States for those payments when he obtains a judgment for damages or a settlement from a third party who is liable to the employee for his injuries." *Kachanis*, 1993 WL 389388 at *3 (citing *Lorenzetti*, 467 U.S. at 168, 104 S.Ct. 2284); *see also* 5 U.S.C. § 8132. Pursuant to 5 U.S.C. §§ 8131–8132, USPS has a subrogation right as to all benefits paid. The sections provide in pertinent part as follows:

§ 8131. Subrogation of the United States

(a) If an injury or death for which compensation is payable under this subchapter [FECA] is caused under circumstances creating a legal liability on a person other than the United States to pay damages, the Secretary of Labor may require the beneficiary to

(1) assign to the United States any right of action he may have to enforce the liability or any right he may have to share in money or other property received in satisfaction of that liability; or

(2) prosecute the action in his own name.

§ 8132. Adjustment after recovery from a third person

If an injury or death for which compensation is payable under this subchapter [FECA] is caused under circumstances creating a legal liability in a person other than the United States to pay damages, and a beneficiary entitled to compensation from the United States for that injury or death receives money or other property in satisfaction of that liability as the result of suit or settlement by him or in his behalf, the beneficiary, after deducting therefrom the costs of suit and a reasonable attorney's fee, shall refund to the United States the amount of compensation paid by the United States and credit any surplus on future payments of compensation payable to him for the same injury.

5 U.S.C. §§ 8131–8132. Neither party denies that USPS has a subrogation right

under FECA. The subrogation clause applies when a third party is independently liable for the employee's injuries. *Lorenzetti,* 467 U.S. at 170, n. 1, 104 S.Ct. 2284.

▮ Plaintiff asserts that USPS waived its subrogation rights in the settlement agreement executed between Plaintiff and Defendant in the prior litigation on June 10, 1997. In the agreement, Plaintiff expressly reserved her right to pursue "compensation from the Department of Labor's Office of Workers' Compensation Program relating to any on-the-job injury she allegedly sustained prior to the date the Parties execute this Agreement." Paper No. 1, Exhibit 1, 3–4. Plaintiff asserts the lack of an express provision in which Defendant reserved its right to seek reimbursement of FECA benefits paid to Plaintiff indicates Defendant waived its subrogation right to seek reimbursement. However, there is no provision in the agreement where Defendant explicitly waived its subrogation rights.

Defendant's subrogation rights arise from Plaintiff's right to sue Price and not from her right to sue Defendant. Thus, Defendant agreed to "forever discharge[ ] the Plaintiff, her representatives, agents, and attorneys, of, and from, any and all claims, actions, and causes of actions arising out of Plaintiff's allegations against the Defendant as contained in her Complaint", but did not waive its subrogation rights stemming from Plaintiff's allegations against Price. *Id.*

▮ Plaintiff also asserts that USPS should be denied reimbursement because it invoked the Touhy regulations which in turn allegedly increased the costs of Plaintiff's litigation and pressured her to settle the dispute. The government's right to reimbursement has not been found to be affected by an entity's failure to take an assignment from the employee, *United States v. Hayes,* 254 F.Supp. 849, 851 (W.D.Ky.1966), type of damages recovered by the employee, *Lorenzetti,* 467 U.S. at 173, 104 S.Ct. 2284, or even the government's contributory negligence, *Green,* 775

F.2d at 969; *Ward,* 726 F.2d at 517. In *Green,* the Eighth Circuit confronted a situation where plaintiff asserted that defendant, the United States Department of Labor, should be estopped from collecting pursuant to its § 8132 subrogation right because it was partly responsible for plaintiff's injuries. 775 F.2d at 969. Even after finding the government's delay in providing plaintiff information "did prejudice [plaintiff's] ability to recover both medical expenses and lost wages both at trial and on appeal", the court held that the government's conduct did not "rise to the level of affirmative misconduct required to prove an estoppel defense against the United States."

▮ Generally, the federal government "may not be estopped on the same terms as any other litigant" when it does not enforce or demand strict compliance with its regulations. *Office of Personnel Management v. Richmond,* 496 U.S. 414, 419, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990); *United States v. Cox,* 964 F.2d 1431, 1435 (4th Cir.1992) (acknowledging in cases where a private litigant sues the federal government, "the Court has held that the Government's interest in preserving a uniform rule of law outweighs any equitable rights the private litigant could assert by pleading estoppel."). Additionally, the Court has suggested that it would be reluctant to uphold a finding of estoppel absent affirmative misconduct by a government official. *See Office of Personnel Management,* 496 U.S. at 421–422, 110 S.Ct. 2465.

Plaintiff's allegations that USPS impeded her lawsuit do not establish the level of affirmative misconduct needed to estop the USPS from asserting its subrogation claim. Moreover, § 8132 does not provide that the government will actively assist or facilitate an individual plaintiff's lawsuit. Consequently, the fact that USPS did not aid Mitchell does not adversely affect its claim for subrogation. Accordingly, on the standard applicable to a motion for sum-

mary judgment, Plaintiff has failed to establish a waiver of Defendant's subrogation rights. It is now appropriate to enter a declaration that Defendant is not prohibited from asserting a subrogation claim.

## IV. Conclusion

For the foregoing reasons, the court shall grant Defendant's motion to dismiss in part and declare that Defendant is not prohibited from asserting a subrogation claim. A separate Order will be entered.